JUDGE CRADDOCK (special judse)
delivered the opinion oe the court:
On the 2d day of May, 1855, Nathaniel T. Grigsby conveyed to John Grigsby all his lands in Clark county, containing one hundred and five acres, being the interest he owned in the landed estate of his father, Lewis Grigsby, deceased; and also all his interest in the dower estate of his mother, Charlotte Grigsby; also a negro boy named Dillard; forty-three head of mules; twenty head of cattle; about thirty-five head of horses; all of his hogs; two wagons and two carts; and all his household and kitchen furniture, farming implements, and his growing crop, reserving only the property which is exempt by law from execution.
The consideration of the sale, as stated in the deed, was the assumpsit of John Grigsby to pay for the said Nathaniel a debt to E. H. Field for about the sum of three thousand seven hundred dollars, for which James Price and J. S. Williams have a lien on a part of the land named in the conveyance; a debt to Thomas Moore for about the sum of two thousand seven hundred dollars; a debt to Charles Poston for about the sum of seven hundred and fifty dollars; a debt to R. E. Brooking for about the sum of eight hundred and seventy-five dollars; a debt to H. G. Poston for about three hundred dollars; a debt to James L. Grigsby for about two hundred and eighty dollars ; and also a debt to the heirs of Couchman for about *91 four hundred and seven dollars. At this point the deed recites: “ I also include in the above conveyance one buggy. The said party of the second part is also to pay off the liability of the party of the first part to the estate of Lewis Grigsby, deceased, supposed to be about five hundred dollars. I also sell to the party of the second part the slaves Flandus and Howard, which I have on hire for the present year. It is understood that the party of the first part has the right to retain the possession of the above named property until the first day of January next.”
This deed was acknowledged by Nathaniel T. Grigsby before the clerk of the county court of Clark county, and lodged for record on the day of its date, and was recorded on the same day.
The appellant, Thomas J. Foster, on the 14th day of May, 1855, filed his petition against the grantor and grantee in said deed, and also against Price & Williams and Thomas Lewis, alleging that he was bound as the surety of said N. T. Grigsby upon a debt to said Lewis for about eleven hundred dollars, evidenced by a note not due until about the 15th January next thereafter; that the conveyance is in its nature a mortgage, and was made to hinder and delay the creditors of Nathaniel T. Grigsby, and with fraudulent intent by the parties to it, and that it is fraudulent in law and in fact; that, in consequence of the stipulation in the deed that the grantor is to remain in possession until the 1st of January, there is danger of the property being injured, &c. Pie prayed for an attachment and an injunction, which were granted. The former was regularly levied on the property, and the latter served upon N. T. Grigsby, restraining him from injuring or disposing of the property, or any part of it. The other attaching creditors filed their petitions on the 14th, 15th, and 16th of May, 1855, and make similar alie *92 gations, and pray for the same relief. They all impeach the conveyance of the 2d of May, 1855, upon the ground of fraudulent intent to hinder, delay, and defraud creditors by the parties to it, and charge that the deed is fraudulent in fact and in law, and that the property conveyed was worth much more than the consideration mentioned in the deed.
On the 11th of July, 1855, John Grigsby filed his answer, in which he denies that the deed is a mortgage, and says “ he sets it up in bar of this proceeding as a real, fair, absolute deed, executed for a full and adequate consideration, and with no view or purpose to hinder, delay, or defraud the creditors of the said N. T. Grigsby.” At the conclusion of his answer, he says “that his object in making said purchase was to secure and indemnify himself; and if the estate be worth more than he gave for it, and the court should decree it to be a mortgage, and should dispose of the surplus, he would be content.”
At the October term of the court, John Y. Grigsby, one of the attaching creditors, filed an amended petition, in which he set up a mortgage, executed to him by N. T. Grigsby, upon the same property which said N. T. Grigsby had, by his deed of the 2d of May, 1855, conveyed to John Grigsby, and being the same property which had been attached by the appellant and by John Y- Grigsby, and as to which the said N. T. Grigsby had been enjoined and restrained from disposing of the same. This latter mortgage is dated 21st May, 1855. At the July term, 1856, of said coui’t, John Y. Grigsby filed an amended petition, in which he withdraws all charges of fraud made in his original petition, as well as his grounds of attachment, and says that the conveyance of the 2d of May, 1855, was bona fide, and that no fraud was intended by either of the parties to that deed; that it was intended to be a mort *93 gage, and that, after paying the debts mentioned in the said deed, he claims the surplus by virtue of the mortgage to him of date 21st May, 1855.
On the 22d of July, 1857, John Y. Grigsby filed another amended petition, in which he says that the deed of the 2d of May, 1855, is not a mortgage, as he had previously stated by mistake, but an absolute sale and conveyance of the property therein mentioned to John Grigsby by N. T. Grigsby, and that, by reason of the stipulation in ■ the deed that the grantor was to retain the possession of the property, the sale was fraudulent per se, and void as to creditors and subsequent purchasers ; if not as to all of the property, certainly it was so as to the personalty.
The property having been sold by consent orders, it was finally adjudged by the circuit court that the proceeds of the sale be first applied to the payment of the debts mentioned in the deed of the 2d of May, 1855, and costs, and then to the debt in favor of John Y. Grigsby, which more than consumed the surplus, leaving the debts in favor of the appellants wholly unpaid. We are clearly of the opinion that the judgment in favor of John Y. Grigsby for the balance of the fund realized by the sale of the property, after paying the debts enumerated in the deed of the 2d of May, 1855, is erroneous. The judgment in favor of John Y. Grigsby for the surplus was predicated, doubtless, upon the mortgage made to him by N. T. Grigsby on the 21st day of May, 1855.
Previous to that time the whole of the property had been seized by the sheriff under attachment sued out by the appellants in their respective suits, John Y. Grigsby himself being also one of the attaching creditors, and the mortgage was made directly in contempt of the injunctions of the court granted in the suits aforesaid, including the suit of John Y. Grigsby, which had been *94 duly served, enjoining and restraining T. N. Grigsby from selling or disposing of any of the property until the further order of the court. The mortgage was a sale and disposition of the property in violation of the injunctions, and ought to be treated as a nullity, so far as it interferes with the rights of the other attaching creditors, provided their grounds for injunction were tenable. (Caldwell’s heirs vs. White, &c., 4 Mon., 569.) Looking to the allegations of the petitions, we are clearly of the opinion there were sufficient grounds for the injunctions, and that the grounds were fully sustained by the evidence ; therefore, if John Y. Grigsby has shown himself entitled to any portion of the funds in contest in these suits, it must rest, as we apprehend, upon his attachment, and not upon his mortgage, except as to the balance that may remain, if any, after paying the debts and costs of the attaching creditors and the debt to John Grigsby.
The deed from N. T. Grigsby to John Grigsby, dated the 2d of May, 1855, is impeached by the appellants as having been made and accepted with the intent to hinder and delay the creditors of the grantor, except the grantee and those creditors whose debts the grantee assumed to pay, as the consideration upon which the deed was made, and as being, therefore, fraudulent and void as to them, by force of the first section of chapter 40, Rev. Stat., title Fraudulent Conveyances and Devises. And that, if the deed is not wholly void as to them, it is contended that it is void to the extent of the personal property, the possession of which was not changed, but remained with the grantor, and that such possession was inconsistent with the title, though authorized by the reservation in the deed. Or, if the reality of the grantee’s debt should give it the preference to its full *95 extent, it is contended, that, at least to the extent of the excess of the property above grantee’s debt, the conveyance was fraudulent and void as to creditors, and the surplus was held in trust for them.
At the date of the deed, N. T. Grigsby had the unquestionable right to sell his property, or otherwise dispose of it, even with the intention and for the purpose of preferring one or more of his creditors over his other creditors. All that the law demands in such .case is, that it shall be done in good faith; and, although there may be fraudulent intent on his part, yet, according to adjudications of this court, if his vendee be himself a creditor, and acting with a view only of his own security, his purchase, for a full and fair consideration, will not be held fraudulent on account of the fraudulent intent of his vendor. (Ford vs. Williams, 3 B. Monroe, 558; Brown vs. Foree, 7 B. Monroe, 358.) But where there is fraudulent intent upon the part of the vendor, and where the vendee has knowledge of it, or from the circumstances it may be rationally inferred that he had such knowledge, or even good grounds to suspect the existence of such fraudulent purpose on the part of the vendor, the strictest observance of good faith is required of him, so that he may not, in an honest effort to secure himself, give the slighest aid or assistance to the fraudulent debtor in his purpose to hinder or delay his other creditors. And where it appears that a fraudulent intent was entertained by the debtor, the transaction with a preferred creditor ought to receive the strictest scrutiny; and, to be sustained, it should be perfectly free from taint on the part of the creditor so preferred.
We think it is manifest from the pleadings and evidence in these cases that N. T. Grigsby did intend, by his sale of the whole of his visible property, except such as is not by law subject to levy and sale under execution, *96 not only to prefer his brother John Grigsby and the creditors whose debts John Grigsby assumed to pay, but also intended to hinder and delay his other creditors. In view of all the proof, we cannot doubt that such was the intention of N. T. Grigsby. Whether John Grigsby so far assented to and concurred in that fraudulent intent as to render the sale to him void as against creditors, is a question of more difficulty.
Nat. and John Grigsby were brothers. They resided within a mile or less of each other. Nat. was a trader in stock; and, within a very short time before the date of the deed of the 2d May, 1855, had returned from the South, where he had sold stock, and brought home with him a large sum of money. Instead of exhausting his money in paying his debts, he entered into an arrangement with his brother John, by which he conveyed to him, in absolute fee simple, his entire estate, including his household and kitchen furniture, and the unexpired term of two hired slaves, stipulating in the deed that he was to remain in the possession of all the property until the first of January, 1856. In consideration of which, John Grigsby assumed to pay certain specified debts, on a part of which he was bound as security, leaving all the other creditors of N. T. Grigsby wholly unprovided for. The debts assumed to be paid amounted, in the aggregate, to nine thousand five hundred dollars. The property conveyed by the deed was afterwards sold by the commissioner of the court, and realized the sum of fourteen thousand four hundred and forty-seven dollars. To this sum is to be added, in estimating the value of the property as it appeared to the parties at the date of the deed, the value of thirty-six acres of land, part of the one hundred and five acres, but which was not sold by the commissioner in consequence of defect of title, but which *97 was not known when the deed was made; thus showing that the consideration was grossly inadequate.
The sale, to use the language of John Grigsby, was a “ lumping trade” — a trade by which the other creditors of N. T. Grigsby were, by the nature of the deed, upon its face being absolute, hindered in the collection of their debts, and the property of the debtor turned over to his brother at private sale in the lump, at thirty to forty per cent, less than its real value.
If the object of John Grigsby was merely to secure himself against loss, as the surety of his brother Nat. upon debts to others, and to secure the payment of the amount that Nat. owed to him, as well as to the estate of their deceased father, why not accept a sufficiency of the property of Nat., at a fair valuation, to satisfy said claims? Why assume other debts for which he was not bound and in nowise connected, so, as to run up a consideration sufficient, in the opinion of the parties, to justify the sale of the entire estate of N. T. Grigsby? The parties to the deed have furnished no reason for such procedure. It cannot be well doubted, from the relationship of the parties and the circumstances connected with the transaction, that John Grigsby fully understood the pecuniary condition of his brother, N. T. Grigsby, and the motives which controlled his action. A transaction which involved the sale of so large an estate by a failing debtor, and by which he was wholly bereft of all property, and that, too, at a grossly inadequate price, to a brother, who cannot be presumed to have been actuated from oppressive or venal motives, must have resulted from other considerations than a bona fide effort to save his own debt only, or to protect himself from loss by reason of his suretyship, or both. In the case of Garland vs. *98 Rives, 4 Randolph, 282, it was held, that a creditor who takes a conveyance to secure his debt, but at the same time inserts provisions in the deed to delay, hinder, or defraud other creditors, comes within the statute ■ of frauds, and the conveyance is void; so, likewise, if the grantee takes a deed to secure his own debt, with provisions to delay, hinder, or defraud other creditors, the deed will be void, although his only motive was to secure his own debt, and the other provisions were forced upon him by the grantor, as the only means of having his own debt secured. Such a grantee will not be considered a bona fide purchaser.
The deed upon its face imports an absolute sale in fee simple of the property therein mentioned, with a reservation to the grantor of the right to the possession of the property until the first day of January, 1856. By this stipulation, the grantor secured the right to the use of the property for about eight months, when, at the same time, the legal title was vested in his grantee, and thus put beyond the reach of his unpreferred creditors, or so covered up his property as to hinder and delay them. This reservation was inconsistent with the absolute character of the sale as evidenced by the deed, and it is by no means certain that such a reservation, whether recorded or not, does not per se render the deed as to the personal property, in judgment of law, fraudulent as against creditors. (Hamilton vs. Russell, 1 Cranch, 319; Baylor vs. Smith, 1 Litt., 112; Hunley vs. Webb, 3 J. J. Mar., 645; Breckinridge vs. Anderson, 713; Daniel vs. Holland, 4 J. J. Mar., 22; Ibid, 237; Brummell vs. Stockton 3 Dana, 134.) Numerous other, cases might be cited to the same effect.
But without deciding whether the recording of the deed containing the stipulation that the grantor was to remain *99 in the possession, and consequently enjoy the use of the whole property for a definite or indefinite period of time, relieves it from the imputation of fraud per se by force of the fourth section of the statute of frauds supra; such a right or reservation being inconsistent with the title conveyed, is at least a badge of fraud, and, when .taken in connection with the other circumstances attending the transaction under review, tends strongly to produce the conviction that the absolute character of the sale of the whole property was resorted to in view of a secret trust in favor of the vendor.
This view is greatly strengthened by the circumstance that the vendor conveyed the interest he had in the unexpired term of two hired slaves, when, at the same time, by force of the reservation in the deed, he had the right to enjoy their services until the full expiration of the time for which they were hired.
Nor can we come to the conclusion that, in consequence of the reality of the debt in favor of John Grigsby, it would be proper to regard the deed as effectual so far as that the grantee acquired the right in equity to have a sufficient amount of the proceeds of the property applied to the payment of his debt as was necessary for the purpose, and the surplus applied to the other creditors. If there were no other evidence in the record impeaching the sale as being unfair than the inadequacy of price, and the failure of possession to accompany the title, it would be equitable probably to treat the sale as valid, so far as it was necessary to satisfy the vendee’s real and just debt. (Short vs. Tinsley, &c., 1 Met., 397.) But inasmuch as the deed imports upon its face an absolute sale in fee simple, and not a mortgage or conditional sale, and as John Grigsby, in his answers to the petitions of the several attaching creditors, claimed that the sale was *100 bona fide, an absolute and unconditional sale, upon a full and fair consideration, and thus put the creditors upon the proof of the alleged fraud, it would not comport with a just regard for integrity and fairness in pleading to permit the vendee afterwards to change his ground and claim the benefit of the deed as even a security for his debt, or to claim the benefit of the rule of equity laid down in the case of Short vs. Tinsley, &c., supra.
Such a course would tend to encourage rather than to prevent fraud. As justly said by Chief Justice Parsons, in the case of Drinkwater vs. Drinkwater (4 Mass. R., 357): “ It would be no discouragement to such practices if the grantee could avail himself of all his claims after the fraud is detected. He would reason, if the conveyance shall be established, I shall save my own debt and enable my friend to cover up his property from his creditors ; if it is avoided only in part, I shall still save my debt. I will therefore help my friend to lock up his property from attachment, as in no event am 1 to be injured.” (Harris, &c., vs. Sumner, 2 Pick., 137.) We are, therefore, of the opinion that the appellee, John Grigsby, cannot, upon this ground, claim any benefit under the deed over the attaching creditors, except John V. Grigsby.
As to the claim of John Y. Grigsby, it must rest upon his mortgage. He can claim nothing by his attachment, inasmuch as by his amended petition he abandoned and withdrew all the allegations upon which the attachment was based, and having elected to rely upon his mortgage, he must look to it for indemnity. He accepted the mortgage with full knowledge that the same property had been previously conveyed to John Grigsby, whose prior equity he admitted in his answer to be good. He will not now be permitted to dispute it. We are therefore of the *101 opinion that his claim on the fund raised by the sale of the property is subordinate to that of John Grigsby.
It results, therefore, from the view we have taken of the matters in controversy in this case, that the fund raised by the sale of the property by the commissioner, after first paying the costs of the sale, &c., shall be applied as follows : First, so much of the fund as may be necessary realized by the sale of the land mortgaged by N. T. Grigsby to Williams & Price, as will pay the debt to Ezekiel Fields, mentioned in said mortgage, together with the costs of Williams & Price. Second, the balance of the fund realized by the sale of all the property, or so much as may be necessary to pay the debts of the attaching creditors in the order (in point of time) that their attachments were respectively sued out, and their costs. Third, the remainder of the fund, if any, or so much as may be necessary to be applied to the payment of the debt of John Grigsby, including the debts he assumed by the deed of the 2d of May, 1855, and the debt to the estate of Lewis Grigsby, deceased. Fourth, the balance, if any remain, to the debt of John V. Grigsby.
It is now considered by this court that the judgment of the circuit court be reversed, and the cause remanded for further proceedings not inconsistent with the foregoing opinion.