J. H. THOMPSON ET AL. *v.* H. H. FURR ET AL.

1. FRAUDULENT CONVEYANCE. *Preference. Reservation to debtor.*
   Security for a pre-existing indebtedness is void as to creditors, if it reserves an advantage inconsistent with its avowed purpose, or an unusual indulgence to the debtor, although the secured creditor has no notice of the fraudulent intent.

2. SAME. *Notice to grantee. Valuable consideration.*
   A grantee who accepts such a conveyance with knowledge of its character, or has reasonable ground to suspect it, forfeits its advantages, although the consideration may be meritorious.

3. SAME.  *Preference.  Notice of fraud.*

    A creditor cannot, as against other existing creditors, accept as collateral security for a pre-existing debt the benefit of the debtor's fraudulent conveyance to a third person, if he has reason to suspect its character.

APPEAL from the Chancery Court of Lincoln County.

Hon. THOMAS Y. BERRY, Chancellor.

*Benjamin King, Jr.,* for the appellants.

The conveyance to H. H. Furr, and the assignment of his notes for the purchase-money of a half interest in the land, and his contract to convey the other half, were accepted by King for J. H. Thompson & Co., as a security for a valid debt. King and the other members of that firm were not aware that the Bloom debt existed, or that Brewer was in debt to any one. Until some ground for divorce exists, alimony is impossible. It becomes a debt only when awarded by decree. 4 Bac. Abr. 411. Then, owing to the peculiar nature of the claim, a conveyance subsequent to the guilty act of the husband, but prior to such decree, can be vacated at the suit of the wife. This rests, however, on the confidential relations of the parties, and the husband's deed is not avoided on the ground that his wife is a prior creditor. In this case no separation or cause therefor is shown, nor can it be inferred from a casual conversation with a stranger that such a claim was contemplated by the wife. It cannot be held that King's statement as to hearing that Brewer's wife would claim alimony is enough to show that the object was to defraud her of a real claim. Not even her existence or identity is established. The fancied claim of a supposed Mrs. Brewer to alimony is the only demand of which the appellants ever heard, and the only one except the Bloom debt mentioned in the record. Under such circumstances, the security is valid, both because no fraud is shown on Brewer's part, and because, if there had been, neither the appellants nor even Furr knew anything about it. *Marbury* v. *Brooks,* 7 Wheat. 556; *Spring* v. *South Carolina Ins. Co.,* 8 Wheat. 268; *Magniac* v. *Thompson,* 7 Peters, 348. The same doctrine prevails in this State. *Henderson* v. *Downing,* 24 Miss. 106; *Harper* v. *Tapley,* 35 Miss. 506; *Kelly* v. *Mills,* 41 Miss. 267. Mrs. Brewer is not complaining; and, from all

that appears in this case, Bloom & Co. are endeavoring to defeat a debt which she and her husband, now living harmoniously together, unite in desiring to have paid.

*J. A. Brown*, on the same side.

Unless the transaction is avoided by Furr's agreement with Brewer, to reconvey a half interest in the land when the debt was paid, the security is valid. It is, in effect, as King states in his answer, a deed of trust of all the land to secure the appellants' debt. The fact that half the property was to revert to Brewer was a benefit, not an injury to Bloom & Co. If the papers had been joined, it would have made a deed of trust to secure the appellants, with Furr as trustee. In such instruments, after paying the secured debt, the trustee holds for the grantor. The debtor may prefer a creditor, and the preference is not avoided by irregularities in his method. *Savage* v. *Dowd*, 54 Miss. 728. Nor if the debtor's object was to benefit the appellants to the manifest prejudice of Bloom & Co., and the appellants knew it, would it avoid the preference. *Park* v. *Bamberger*, 52 Miss. 565. If the conveyance by Brewer had been directly to the appellants, who had executed a defeasance to one half, to operate when the debt was paid, it would have made a mortgage, to overturn which the court must hold that a mortgage consisting of an absolute deed and secret defeasance is void as a security for debt. Such a transaction, however, is perfectly fair. *Carnall* v. *Duval*, 22 Ark. 136; *Doswell* v. *Adler*, 28 Ark. 82; *Hill* v. *Bowman*, 35 Mich. 191; *Crawford* v. *Kirksey*, 50 Ala. 590. Even if Brewer contrived to defraud, the appellants knew nothing of it, but are innocent. On what ground, then, shall the entire land be taken from them and given to Bloom & Co.? Where is their superior equity? The legal title is in Furr. Under such circumstances the legal title of the trustee will prevail to secure the preferred creditors. *Stover* v. *Herrington*, 7 Ala. 142; *Governor* v. *Campbell*, 17 Ala. 566; *Cornish* v. *Dews*, 18 Ark. 172; *Marbury* v. *Brooks*, 7 Wheat. 556; *Dudley* v. *Danforth*, 61 N. Y. 626; *Brooks* v. *Marbury*, 11 Wheat. 78; *Wilson* v. *Eifler*, 7 Cold. 31; *Myers* v. *Kinzie*, 26 Ill. 36. Brewer could have given the preference even if he had been insolvent, which is not shown in this case. *Hollister* v. *Loud*, 2 Mich. 309.

In fact, he is not shown to have owed any one but Bloom. The alimony is a mere pretence, without even a cause for divorce shown. If there be a Mrs. Brewer, she is no creditor, unless the court is prepared to hold that every deed of a married man is void as against his wife. *Chase* v. *Chase*, 105 Mass. 385; *Bouslough* v. *Bouslough*, 68 Penn. St. 495; *Draper* v. *Draper*, 68 Ill. 17; *Morrison* v. *Morrison*, 49 N. H. 69; *Feigley* v. *Feigley*, 7 Md. 537; *Frakes* v. *Brown*, 2 Blackf. 295; *Clagett* v. *Gibson*, 3 Cranch C. C. 359. Even if the cause for divorce be assumed to exist, the wife's claim is a mere unliquidated demand, not within the statute against fraudulent conveyances. *Hill* v. *Bowman*, 35 Mich. 191.

*R. H. Thompson*, for the appellees.

1. The appellants' rights spring from a fraudulent conveyance, and one of them had notice that the conveyance of the whole land was coupled with a secret trust that it was to operate as a conveyance of but one half. A deed void in part is void *in toto*. 3 Wait's Actions and Defences, 470; *Harney* v. *Pack*, 4 S. & M. 229; *Burke* v. *Murphy*, 27 Miss. 167; *Hyslop* v. *Clarke*, 14 Johns. 458; *Weeden* v. *Hawes*, 10 Conn. 50; *Tickner* v. *Wiswall*, 9 Ala. 305; *Russell* v. *Winne*, 37 N. Y. 591; *Goodrich* v. *Downs*, 6 Hill, 438; Bump Fraud. Conv. (2d ed.) 476–478, and authorities cited. Notice to one partner is notice to the firm. *Fitch* v. *Stamps*, 6 How. 487; Parsons Part. 196, and authorities; Wade on Notice, § 684; *Dabney* v. *Stidger*, 4 S. & M. 749. King also had actual knowledge that the deed was intended to defraud Mrs. Brewer of her alimony. She was a creditor. Bouvier's Law Dic. title, Creditor; *Shean* v. *Shay*, 42 Ind. 375; 2 Bish. Marriage and Divorce, § 450. But knowledge of her husband's design to defraud her, in morals and equity, taints the appellant's title, whether she is technically a creditor or not. It was enough to put them on inquiry. And even if they had paid value, they would not have been innocent purchasers. Bump Fraud. Conv. 484. If King was anxious to acquire a lien on the whole land, as he says, why did he only take Furr's obligation to convey? Obviously, the arrangement was not, as he answers, simply to secure the appellants, but was to protect Brewer, and for his advantage.

They could not secure their debt by becoming parties to a scheme of fraud.

2. As the appellants took a security merely, they are not *bona fide* purchasers, and are therefore not protected even if they had no notice. *Union College* v. *Wheeler*, 61 N. Y. 88; *Sims* v. *Hammond*, 33 Iowa, 368; *Mason* v. *Ainsworth*, 58 Ill. 163; *Twitchell* v. *McMurtrie*, 77 Penn. St. 383. They obtained only the rights in the mortgage which Brewer had, however it may be with the notes. *Faull* v. *Tinsman*, 36 Penn. St. 108; *Walker* v. *Johnson*, 13 Ark. 522; *Timms* v. *Shannon*, 19 Md. 296; *Martin* v. *Richardson*, 68 N. C. 255; *Ingraham* v. *Disborough*, 47 N. Y. 421. He who buys an equitable interest takes subject to all equities. However honest and ignorant of fraud the appellants may have been, yet they only acquired Brewer's interest. *Johnston* v. *Dick*, 27 Miss. 277; *Bank of England* v. *Tarleton*, 23 Miss. 173; 2 Hovenden on Fraud, 183. The appellants, however, do not occupy the position of innocent purchasers in any sense. No man can be an innocent purchaser of a mortgage who would not be, under the same circumstances, an innocent purchaser of the land, had he bought the land instead of the debt. Had J. H. Thompson & Co. bought the land, the following authorities would test their *bona fides*, and the same measure should now be meted. *Agricultural Bank* v. *Dorsey*, Freem. Ch. 338; *Upshaw* v. *Hargrove*, 6 S. & M. 286; *Boon* v. *Barnes*, 23 Miss. 136; *Rowan* v. *Adams*, S. & M. Ch. 45.

CHALMERS, J., delivered the opinion of the court.

William B. Brewer, being indebted to J. H. Thompson & Co., went to Benjamin King, a member of that firm, accompanied by H. H. Furr, and stating that he had sold his lands to Furr, and desired, with the notes taken for the deferred payment, to secure his indebtedness to the firm, requested King to prepare the necessary papers, to which request King acceded. The scheme as developed was this: Brewer was to convey, or pretend to convey, to Furr the whole of his land for a nominal consideration of twelve hundred dollars, of which six hundred were to be secured by notes of the purchaser, and six hundred to be

expressed in the deed as having been paid in cash. In reality, no cash was to be paid, and only a half interest in the land was to be sold ; for though the deed was to purport to convey the whole, it was to be accompanied by a secret defeasance, whereby Furr was to obligate himself to reconvey to Brewer a half interest upon demand. The notes for six hundred dollars, which constituted the consideration of the half interest really sold, were to be transferred to J. H. Thompson & Co. as collateral, for the debt due them by Brewer, and were to be protected by a lien reserved in the deed. When the scheme was unfolded to King, he objected that if the defeasance was executed to Brewer, it might be used to defeat the lien of the notes as to one half of the land, and insisted that the notes be allowed to operate as a charge upon the whole land. It was consequently agreed that the defeasance should be executed to King, and Furr accordingly delivered to him an obligation to convey a half interest in the land upon demand, it being understood, of course, that King would not make such demand until the notes transferred to him as collateral were paid, and when he received the conveyance that he would hold as trustee for Brewer.

Bloom & Co. were existing creditors of Brewer at the date of this transaction, and getting wind of it, sued out an attachment, and levied it on the land. Having sustained their attachment, reduced their demand to judgment and bought the land under a *venditioni exponas*, this contest has arisen between them and J. H. Thompson & Co., as to their respective rights. Bloom & Co. insist that the transaction, out of which the notes held by Thompson & Co. grew, was fraudulent, and that the latter, having notice of the fraud, acquired no rights under it which can be interposed to defeat the just demands of creditors. Thompson & Co. insist that it was only an acquisition by them of a security for a valid debt, and that they cannot be affected by any fraud intended towards other creditors, if any such there were. It must have been perfectly manifest to King, when the scheme concocted between Brewer and Furr was disclosed to him, that the design was to mislead and defraud somebody. A deed to the whole land, reciting a consideration of twelve hundred dollars, was to be placed on

record. Six hundred dollars only were to be paid, and a half interest only to pass, the end being accomplished by the contemporaneous delivery of a secret obligation to reconvey the other half. The obvious result and manifest purpose was to secrete and hide out Brewer's continued ownership of one half the land, so as to protect it from the attacks of creditors. King admits that he suspected this, though he did not know that Brewer was in debt except to his wife. He says that either on the day of the transaction or a short time previously, he had heard that Brewer's wife had a claim against him for alimony, and though nothing was said on the subject, he suspected that the scheme was devised in order to defeat her claim. So suspecting, he perfected the negotiation and put it in shape for the sake of protecting the debt due his firm. However innocent of intentional fraud or moral *mala fides* he may have been, with whatever sincerity he may have supposed that he had a right to do this, — and that he did so suppose is apparent from the readiness and frankness with which he details the facts, — the law will not tolerate such a transaction. A creditor has a perfect right to protect his own interests, but in so doing he must not lend himself to any scheme whereby others may be defrauded ; and he does this whenever he knowingly accepts the benefits of an arrangement by which others are deceived and misled, and the interests of the debtor thereby improperly protected from the lawful demands of his creditors.

One of the surest tests of a fraudulent conveyance is, that it reserves to the grantor an advantage inconsistent with its avowed purpose, or an unusual indulgence. Whenever this is the case, the grantee who has accepted it, either with express knowledge of its character or reasonable ground to suspect it, forfeits its advantages, no matter how meritorious the consideration he may have paid, or how just the debt protected by it. Especially is this so, when, as in this case, it consists merely in the voluntary reception of a security for a pre-existing indebtedness. In such a case the conveyance would be avoided by the fraudulent intent of the grantor, though the grantee had no notice of it, because, having paid nothing for its acquisition, he is not damnified by its loss. *Farmers' Bank* v. *Douglass*, 11 S. & M. 469 ; *Harney* v. *Pack*, 4 S. & M. 229 ; *Pope* v. *Pope*, 40

Miss. 516. In the case at bar there is a union of fraudulent intent on the part of the grantor, of knowledge on the part of the grantees, and of a conveyance to protect a pre-existing debt without the advance of any present consideration. The chancellor rightly decreed it void as to existing creditors.

*Decree affirmed.*

