E. A. RICHARDS, *et al.*, v. THE SCHREIBER, CONCHAR & WESTPHAL COMPANY, *et al.*, Appellants.

**Fraudulent Conveyance:** PARTICIPATION BY CREDITOR. A mortgage given by a debtor, to hinder and delay his creditors, to the knowledge of the mortgagee, and taken in part to aid in carrying into effect that purpose, is fraudulent as to creditors.

**Trust Fund:** DEBTOR AND CREDITOR. E, engaged in selling goods, received goods from D, under a contract by which E was to be agent for D, and the goods and proceeds of sales were to remain the property of D, and to be treated as a special deposit for D until finally settled for; there being provisions for remittances of proceeds of sale immediately on receipt thereof. *Held,* that E, having to the knowledge of D, without objection, retained and used the moneys received from such sales, and treated the money received therefrom, together with that received from other sources, as a common fund, D could not claim it, as against other creditors of E, as a trust fund, but had the rights of a general creditor only.

**Attachment:** SUNDAY LEVY: *Amendments* Code 2952 provides that an attachment may be served on Sunday if the petition, in addition to the ordinary averments, states that the debt, will, else, be lost. Section 2965, that where there are several attachments against the same defendants they shall be executed in their order of receipt by the sheriff. Section 3021 directs that the attachment laws shall be liberally construed, that plaintiff may at any time amend the petition, and that no attachment shall be lost if there can be an amendment to show that a legal cause for the attachment existed at the time it was issued. An attachment was put into the hands of the sheriff a few minutes before midnight between Saturday and Sunday. The reason why it was not served at once, was because the sheriff lacked some blanks at the time. The petition did not have the allegations which authorize service on Sunday. On Sunday morning another claimant filed a petition authorizing a Sunday attachment, and placed the writ with the sheriff. Still later, the claimant who had given his writ to the sheriff before the preceding midnight, amended his petition by adding the allegation that his debt would be lost unless his writ was served on Sunday. *Held,* these statutory provisions cover

NOTE.—For participation in fraud of a debtor to defeat a conveyance intended by him to defraud creditors, see very extensive notes to *Rice v. Wood,* 31 L. R. A. (Ark.) 609.

writs issued on days other than Sunday. The sheriff rightly declined to serve the writ left with him last, first, though that writ was the first supported by a petition authorizing Sunday service.

SAME. While the facts that such mortgage was taken with the knowledge that the giver was financially embarrassed, that it largely exceeded the amount of the liabilities, and that it covered all of the debtor's property subject to execution, are not conclusive evidences of fraud, they should be considered in determining the question whether the mortgage was taken with intent to hinder and delay other creditors.

Conditional Sale: RECORDING ACTS: A sale of chattels, made on condition that they should remain the property of vendor until paid for, is a conditional sale within Code, section 1922, and the rights of the vendor are subordinate to those of one who takes a mortgage upon the goods from one in actual possession of them, without notice of said terms of sale.

Election of Remedies. Where it does not appear but that plaintiff had full knowledge of all involved facts, the beginning by him of an action aided by attachment against one to whom he has sold goods on condition that they should remain his property until fully paid for, is an election to treat the sale as being absolute.

Marshaling Assets. Ordinarily, when one creditor who holds a chattel mortgage securing a debt secured by other collateral, also has a real estate mortgage, and another creditor who has no chattel security has been compelled to buy the realty mortgaged, and assumes the mortgage, the creditor having both securities would be required to exhaust the chattels first. But when the chattel mortgage is held invalid as being in fraud of creditors, the mortgagee may resort to the real estate, after exhausting the collaterals securing the debt also secured by said chattel mortgage.

*Appeal from Calhoun District Court.*—HON. GEORGE W. PAINE, Judge.

FRIDAY, MAY 22, 1896.

ACTION in equity for the foreclosure of a chattel mortgage, for the appointment of a receiver of the mortgaged property, and to have settled the interests of the defendants in the mortgaged property and its proceeds. There was a hearing on the merits, and a decree, from which the defendants, the Schreiber, Conchar & Westphal Company, the Staver & Abbott

Manufacturing Company, the Michigan Stove Company, the William Deering Company, and other defendants appeal. After the appeals were taken by the parties named, E. A. Richards also appealed.—*Modified.*

*Henderson, Hurd, Daniels & Kiesel* for appellant Schreiber, Conchar & Westphal Co.

*Yeoman & Kenyon* for appellant Staver & Abbott Manuf'g Co.

*Stevenson & Lavender* for appellant Michigan Stove Co.

*M. W. Frick* and *B. B. Foster* for appellants George W. Brown & Co., Keystone Manuf'g. Co., Thomas Manuf'g. Co., William Meriner (assignee), F. E. Brown, Tolerton & Stetson Co., Cutler Hardware Co., Acme Harvester Co., Salem Lock Co., G. D. Colton & Co., Janesville Machinery Co., Thomas Johnson and William Brandon (as a firm), and Mesker & Bro., defendants.

*J. C. Kerr* for the plaintiffs, appellees.

*E. A. Walton* for the defendants, appellees, Standard Oil Co. and Dubuque Harness and Saddlery Co.

ROBINSON, J.—For some time prior to the eighteenth day of August, 1893, the defendant, H. C. Ehrlich, had been engaged at Manson, in the business of selling hardware, agricultural implements, and other kinds of property. On the day named, he executed to the plaintiff, E. A. Richards, and E. A. Richards as trustee for the Manson Loan and Trust Company, and L. H. Plumb, a mortgage on his entire stock in trade, and on all his book accounts, and also a mortgage on real estate. These mortgages were

given, in part, at least, to secure the payment of about nine thousand dollars, with interest, represented by promissory notes, which the mortgagor and Ehrlich & Eadie (a firm of which he was a member), had sold and guarantied to the plaintiffs, and the persons whom they represent. The mortgage was recorded on the nineteenth day of August, and on the twenty-first this action was commenced. The plaintiff, E. A. Richards, was appointed and qualified as receiver, and took possession of the mortgaged property. The defendants are creditors of Ehrlich, and claim interests in the mortgaged property, or rights against the plaintiff on account of it. They allege that the chattel mortgages were fraudulent and void, as against the creditors. Questions in regard to the priority of the claims of some of the defendants, and their right to have them treated as preferred, are also involved in the case.

I. The district court adjudged that the chattel mortgage was valid, and a first lien on the property therein described; and whether that is correct is the first question we are required to determine. The facts in regard to the giving of the mortgage are as follows: On the day it was given, Ehrlich was being pressed by his creditors, especially by the Schreiber, Conchar & Westphal Company, which was represented at Manson by its attorney, Mr. Kiesel. He demanded payment of the claim of his client by the delivery of merchandise. Ehrlich went to Ft. Dodge to obtain legal counsel, and on his return was advised to confer with Richards, and did so. He told Richards, that the creditor named was pressing him, and that he wished some method devised by which to keep creditors from taking his stock of merchandise until he could pay them from the sales, and that he wished to continue in business in such a manner that his creditors could not interfere with him. The testimony of Richards shows

that Ehrlich went into his office about 9 o'clock at night, told him he was afraid of an attachment, and asked what he had better do. Prior to that time, nothing had been said by either of them in regard to securing the claims owned and represented by the plaintiffs; but, after talking about the situation, Richards thought of those claims, and suggested that they be secured. Ehrlich states that, after he had explained his condition and his desire to protect his property from his creditors, Richards said he thought they "could fix it up," and went to his vault, brought out notes he had discounted and others he held as collateral security, and said he thought he could make out a contingent claim, for which Ehrlich could secure him by giving him a chattel mortgage, and, by that means, remain in possession of the store, continue to carry on the business, and hold off his creditors until the goods should be sold. After some conversation, Richards and Ehrlich went to Rockwell City (the county seat), that night, and there had the mortgage in controversy, also another on real estate, executed to the plaintiffs. The mortgages thus given, covered all the property subject to execution, which Ehrlich then owned. At that time, Richards held two notes of Ehrlich, which amounted to seven hundred dollars, and to secure them, and also liability on the guarantied notes, and any other indebtedness which might arise, held collateral notes to the amount of one thousand four hundred dollars. None of those notes, and none of the notes which had been discounted and guarantied, were due. The notes discounted were selected by the plaintiffs, when they were purchased, from a quantity offered, and were regarded as good. The value of the property mortgaged is not clearly shown. Ehrlich states that the value of the accounts was from three thousand five hundred to four thousand dollars, and

that the stock of merchandise was worth eight thousand dollars. The value of the realty mortgaged is not shown, but it was subject to a first mortgage for two thousand seven hundred dollars, and has been conveyed by Ehrlich to the Staver & Abbott Manufacturing Company, which assumed the first mortgage. That conveyance was in part payment of the amount which he was owing to the company. It seems to be conceded that the credit given on account of it was two thousand dollars. Richards has collected, of the collateral notes, sufficient to pay the note for seven hundred dollars, and sixty-four dollars and eighty-six cents in addition, and has remaining collateral notes to the amount of more than six hundred dollars. He has collected about six thousand dollars on the notes secured by the mortgages to the plaintiffs, and of those remaining unpaid, seven hundred dollars in amount, if not more, are collectible. He has collected about one thousand dollars of the accounts, and realized from a sale of a part of the mortgaged property nearly four thousand dollars. It is evident that the plaintiffs might have taken a valid mortgage to secure the contingent liability of Ehrlich & Eadie, and of Ehrlich, when the one in suit was taken. Ehrlich's financial condition at that time justified it, and the fact that a considerable portion of the discounted notes have not been paid and are perhaps not collectible, shows that it would have been good business policy to have demanded such a mortgage. Ample security might well have been taken to indemnify the plaintiffs and the persons they represent, against any loss which might have been reasonably apprehended. But it does not appear that the plaintiffs ever had any reason to believe, that the loss on the discounted notes would be any greater than it is now likely to be, or a little more than two thousand dollars. Yet they took the mortgages to secure a liability, stated to be nearly

nine thousand dollars, on all the property of the debtor subject to execution, worth three or more times as much as the amount which he could reasonably be expected to have to pay. The taking of a mortgage for an amount greater than the indebtedness actually intended to be secured, although ordinarily a badge of fraud, is not necessarily fraudulent. *Rubber Co. v. King*, 90 Iowa, 343 (57 N. W. Rep. 864). Nor does the taking of a mortgage on property of much greater value than the debt to be secured, even, though the property comprise all the mortgagor has subject to execution, alone indicate fraud. But when it is charged that a mortgage is fraudulent as against creditors, the mortgagees knowing that the mortgagor is embarrassed when the mortgage was taken, the amount of the liability to be secured, and the value of the security given, and whether it is all the debtor owns, subject to execution, may well be considered, with other facts, to aid in ascertaining the true nature of the transaction. A creditor may take security for the debt due him, even though he is aware that the purpose of the debtor in giving it is to hinder, delay, and defeat, and thus to defraud, other creditors. *Chase v. Walters*, 28 Iowa, 460; *Kohn v. Clement*, 58 Iowa, 589 (12 N. W. Rep. 550); *Lead Co. v. Haas*, 73 Iowa, 404 (33 N. W. Rep. 657), and (35 N. W. Rep. 494); *Jones v. Loree* (Neb.) (56 N. W. Rep. 391). But if the creditor know of the fraudulent purpose of the debtor, and accept the mortgage wholly or in part to aid in accomplishing it, he participates in the wrong, and the mortgage is fraudulent against creditors, although it was only on a reasonable amount of property to secure a valid debt. *Headington v. Langland*, 65 Iowa, 276 (21 N. W. Rep. 650); *Clark v. Raymond*, 86 Iowa, 664 (53 N. W. Rep. 354); *Crawford v. Nolan*, 70 Iowa, 101 (30 N. W. Rep. 32); *McCreary v. Skinner*, 83

Iowa, 363 (49 N. W. Rep. 986); Jones, Chat. Mort. section 334. Ehrlich may have believed that it was for the best interests of his creditors to place his property beyond the reach of attachment until he could realize its value in the ordinary course of business, and pay his debts, and Richards may have shared in that belief. But, if so, that did not prevent the transaction from being fraudulent ˙in law.

That it was the purpose of Ehrlich, in giving the mortgages, to hinder and delay his creditors, is clear. The mortgagees knew of that purpose, and we cannot avoid the conclusion that what they did was, in part, to aid in carrying it into effect. That tainted the transaction with fraud, and the mortgagees cannot derive any benefit from the mortgage, prejudicial to the creditors of the mortgagor. The court erred in adjudging it to be valid.

II. On the nineteenth day of August, 1893, the Michigan Stove Company commenced, in the district court of Calhoun county, an action against Ehrlich, demanding judgment against him for one thousand, one hundred and ninety dollars and sixty cents, and asking a writ of attachment against his property. A writ was duly issued, and, in the evening of that day, placed in the hands of the sheriff for service. He and Mr. Lavender, an attorney for the stove company, then went to Manson, arriving there about 10 o'clock. There seems to have been some conference in Manson, in which Lavender, Kiesel, and Richards participated, respecting the proper method of proceeding. Finally, a short time before midnight, Richards took possession of the mortgaged stock of merchandise, and of the building in which it was kept, and Lavender directed the sheriff to garnish him. The sheriff went away to obtain blank notices of garnishment, and returned without them a few minutes after midnight, or on Sunday, the twentieth of August.

Lavender then decided that, in order to have the writ served on that day, it would be necessary to file an amendment to the petition, and he returned to Rockwell City for that purpose. The sheriff went with him to obtain the blanks he needed. Representatives of the Schreiber, Conchar & Westphal Company also went to Rockwell City, and, by 6 o'clock in the morning, had filed papers in an attachment suit against Ehrlich, with the proper averments for the issuance and service of the writ of attachment on Sunday, and had secured and placed a writ in the hands of the sheriff, with directions to go to Manson at once and serve it. That was before the stove company had filed the amendment to the petition, to secure the service of its writ on Sunday. During the day, the sheriff and representatives of the stove company and of the Schreiber, Conchar & Westphal Company went to Manson, and the mortgagees were garnished under the two writs; but the sheriff refused to comply with the demands of the last-named company to serve its writ first, and served that in favor of the stove company first. The decree of the district court gave to the claim of that company, under its garnishment, priority over the claim of the Schreiber, Conchar & Westphal Company, and of that part of the decree the last-named company complains. The evidence shows that the sheriff was told by the attorney for the stove company, on Saturday night, to serve the writ by garnishing Richards, and that he failed to do so then, only, for lack of time and blanks. The evidence also shows that, had the sheriff left Rockwell City when the second writ was placed in his hands, he would have served it before the first one. But he did not do so, giving as a reason that he proceeded to get breakfast, his notices, and his team, and did not start until 10 o'clock or later. When he left Rockwell City,

the amendment to the petition of the stove company was on file. The claim of the Schreiber, Conchar & Westphal Company is that, when the sheriff received the writ, he had no other that he could serve on that day, and, consequently, that its right to service was prior to that of the stove company; that the amendment to the petition of the stove company did not authorize the sheriff to serve its writ on Sunday, for the reason that only writs issued on that day can be so served; and, if this is not so, that the amendment was effective only from the time it was filed; and that the right to serve the writ commenced at that time. and that it could not be made senior to the other writ.

Section 2952 of the Code, provides that "where the petition states, in addition to the other facts required, that the plaintiff will lose his claim unless the attachment issues and is served on Sunday, it may be issued and served on that day." Section 2965 provides that, "where there are several attachments against the same defendant, they shall be executed in the order in which they were received by the sheriff." Section 3021 is also a part of the chapter relating to attachments and garnishments, and contains the following: "This chapter shall be liberally construed, and the plaintiff, at any time when objection is made thereto, shall be permitted to amend any defect in the petition, affidavit, bond, writ or other proceeding; and no attachment shall be quashed, dismissed, or the property attached released, if the defect in any of the proceedings has been or can be amended, so as to show that a legal cause for the attachment existed at the time it was issued, and the court shall give the plaintiff a reasonable time to perfect such defective proceedings." The policy of the law is, to permit service of the writ on Sunday, when the essential facts are shown by the petition.

The reasons for permitting the service on Sunday of a writ issued on that day, apply as strongly to the service of a writ issued on another day, but which, for a sufficient reason, has not been served, if the petition shows, that the plaintiff will lose his claim if the service is not made on Sunday. It would not be a liberal, but a most narrow and technical construction, to hold that the writ cannot be served on Sunday, if issued on some other day of the week. Nor do we think the effect of filing the amendment to the petition, showing the facts necessary to a service on Sunday, should be limited to the time commencing with the filing. The writ was at all times valid, and was in the hands of the sheriff for service. The right to serve it was suspended Sunday morning, but was revived when the amendment was filed; and, as it was the first one placed in the hands of the officer for service, it was properly served first. We do not think the evidence shows delay or misconduct on his part sufficient to give the service of the second writ priority over that of the first. Our attention has been called to numerous authorities which are claimed to be in conflict with our conclusions on this branch of the case, but the statutes of this state must govern, and we do not think any of the authorities cited are applicable under those statutes. We have construed them liberally, as we are required to do, to the end that substantial justice shall prevail, and not be defeated on purely technical grounds. In our opinion, the district court was right in giving to the garnishment in favor of the stove company, priority over that under the writ in favor of the Schreiber, Conchar & Westphal Company.

III. The Staver & Abbott Manufacturing Company claims that it sent to Ehrlich a number of buggies, buggy shafts, and an extra buggy top, on condition that they remain its property until he had fully

paid for them. It asks that its title to the property be confirmed as against the mortgage and the garnishments, and the district court granted that relief.

In this, we think, there was error. The sale was a conditional one and not valid, under section 1922 of the Code, as against the mortgagees. Ehrlich was in actual possession of the property, pursuant to his contract of purchase, when the mortgage thereon was given to the plaintiffs, and they did not have any knowledge or notice, of any kind, of the terms of the purchase. It may be said the plaintiffs do not appeal from this part of the decree, and that is true. But a further objection to a recovery of this property by the Staver & Abbott Manufacturing Company, of which other creditors may avail themselves, is the fact that at the October term, 1893, of the Calhoun county district court, that company brought an action for the recovery of the price of the property, aided by attachment. The petition in that action averred that Ehrlich & Eadie, H. C. Ehrlich, and C. A. Eadie owed the plaintiff about four thousand dollars for goods sold. The writ of attachment was levied on real estate of Ehrlich, and Richards was garnished under it. A part of the real estate was sold to the company, as already stated, in part payment of its claim. The suit and proceedings thereunder, were an unequivocal election by it to waive any right it may have had to recover the property as its owner, and to treat it as sold absolutely to Ehrlich. See *Kearney Milling and Elevator Co. v. Union Pac. Ry. Co.*, 97 Iowa, 719 (66 N. W. Rep. 1059), and authorities therein cited. It is suggested that the action was hastily brought, by attorneys not fully advised of the facts, and that it should not be treated as an election of remedies. But there is nothing before us to show that the action was not brought with a full knowledge of all the facts, and it

appears to be still pending. It was commenced long before the answer of the company was filed in this case, and we think it should be given the effect of an election to treat the property as sold absolutely. Some claim is made that it does not appear that the attachment suit was for the price of the property which is claimed in this case. We are of the opinion that the evidence does not sustain the theory, but shows that the claim made in the attachment suit was for all the merchandise Ehrlich had purchased of the company for which payment had not been made.

IV. The decree of the district court required the plaintiffs to exhaust the property included in the real estate mortgage before using any of the proceeds of the property secured by the chattel mortgage for the payment of their claims. It is said that in this the court erred. "The doctrines of marshaling grow out of the principle that a party having two funds to satisfy his demand shall not, by his election, disappoint a party who has only one fund." Bisph. Eq. section 340; 1 Story, Eq. Jur. section 633. But this rule is designed to do equity, not to defeat it. The Staver & Abbott Manufacturing Company had a lien upon the real estate, and in that respect its rights were paramount to those of other creditors. It had purchased the property, and assumed the payment of a mortgage thereon for nearly three thousand dollars. Therefore, if the mortgages to the plaintiffs had been valid, they should have been required to exhaust the other mortgaged property before resorting to the real estate. *Mickley v. Tomlinson*, 79 Iowa, 388 (41 N. W. Rep. 311), and (44 N. W. Rep. 684). The equities of the garnishing and other general creditors were not superior to those of the Staver & Abbott Manufacturing Company. But we do not find that that company assailed the real estate mortgage in the district court, and, since the plaintiffs cannot rely upon the

chattel mortgage as against creditors, they have a right to rely upon the real estate mortgage. They will be required, however, to exhaust the collateral notes, and other securities, if any, in their hands, before proceeding against the real estate.

V. The William Deering Company was made defendant by order of the court, and filed an answer, in which it claims, that during the year 1893, until the month of August, Ehrlich & Eadie were its agents at Manson, under a contract, by which all goods received by the agents, and the entire proceeds of all sales, were to remain the sole property of the company, and be treated as a special deposit for it, until finally settled for; that, under that contract, Ehrlich was furnished goods by the company, for which there is an unaccounted balance of nearly one thousand five hundred dollars; that, when the receiver was appointed, Ehrlich, as the successor of Ehrlich & Eadie, held in his possession, harvesters and other goods which, by virtue of the contract specified, belonged to the company, with notes and accounts representing sales made before that time, of goods belonging to it; and that the receiver had refused to surrender to it the notes so taken. It asked that the chattel mortgage taken by the plaintiffs, be adjudged fraudulent and void, and that it be given possession of the notes. It afterward filed a petition of intervention, in which it recited the agreement stated, and alleged an accounting with Ehrlich & Eadie, on the eighteenth day of August, 1893, which showed a balance due to it, of nearly one thousand six hundred dollars. That balance has been reduced to eight hundred and eleven dollars and four cents, and the company asks that the balance now remaining unpaid, be adjudged to be a trust fund, and that a lien therefor be established on all the assets in the hands of the receiver, superior to the claims of its co-defendants.

After this action was commenced an order was made by one of the district judges, requiring the receiver to turn over to the William Deering Company certain property, and the balance last stated is now, substantially, all there is in controversy. The district court adjudged that the William Deering Company was not entitled to a lien on the property in the hands of the receiver for the balance due to it, and that its only right to such property was that of a general judgment creditor, subject to the claim of the plaintiffs, the Standard Oil Company, the Michigan Stove Company, the Schreiber, Conchar & Westphal Company, and the Staver & Abbott Manufacturing Company. The contracts in question, for the years 1892 and 1893, were, substantially, the same. A settlement of the business for the year 1892 was made between September and the end of the year, and payment of the balance due was made in January. The settlement for the first part of the year 1893 was made the day the mortgage in controversy was given.

The course of business pursued by Ehrlich & Eadie, and by Ehrlich, under the contracts, was to turn over to the William Deering Company notes taken for its machines or other property sold, and to retain and use the money received on sales. No attempt was made to keep it separate from that received from other sources, but all money from the business, however received, was treated as a common fund, and that fact was known to the company, and no objection to that course of procedure seems to have been made. A portion of one of the contracts set out in the record, in regard to twine, required the agents to sell only for cash, and to remit immediately the proceeds, and to pay six per. cent. interest on amounts due and to be accounted for, and provided for an accounting on the first day of September, after the contract was made. The portions

of the other contracts relating to terms of payment are not set out, but it is shown that the provisions requiring the prompt remittance of money were in effect waived, that proceeds of sales were used by the agents with the knowledge and acquiescence of the principal, and that the relation of debtor and creditor was thereby created. The case is similar in that respect to *Chappell v. Craig*, 96 Iowa, 273 (65 N. W. Rep. 146). We conclude that there was not sufficient grounds for establishing a trust against the funds in the hands of the receiver.

VI. The plaintiff, Richards, appealed from so much of the decree as required the plaintiffs to exhaust the real estate security before appropriating any of the property secured by the chattel mortgage to the payment of their claims. In view of the conclusions we have reached, that part of the decree is of but little importance. The objection to it is that it is not supported by the evidence. The point is suggested, rather than argued, and we need only say that there is evidence to justify the part of the decree to which we have referred.

VII. The decree provided for the payment by the receiver of the claims of the Standard Oil Company, from collections made on collateral notes which were not required to pay the notes to secure the payment of which they were held. No objection to that portion of the decree is made, and it is affirmed.

The district court found and adjudged that the mortgagees were in possession of the mortgaged personal property when they were garnished by the Michigan Stove Company and the Schreiber, Conchar & Westphal Company, and the decree in that respect is fully sustained by the evidence.

We conclude that the order of payment of the several defendants is substantially correct as fixed by the district court; that is, that the funds and other

property in the hands of the receiver are to be used in first paying the Standard Oil Company, next the Michigan Stove Company, and then the Schreiber, Conchar & Westphal Company. The property, if any, remaining after those payments are made, is to be used in paying the claims of the general creditors, in proportion to their respective amounts. The decree of the district court, in all particulars not in conflict with the views we have expressed, is affirmed, and, in all other respects, it is reversed. The cause is remanded to the district court for a decree in harmony with this opinion.—Reversed.