[Civil No. 2039.   Filed March 27, 1924.]

[224 Pac. 622.]

ARIZONA STATE BANK, a Corporation, and A. T. LA PRADE, Plaintiffs, v. CRYSTAL ICE & COLD STORAGE COMPANY, a Corporation, WILLIAM G. LENTZ and F. T. LA PRADE, Defendants.

WILLIAM G. LENTZ, Cross-Plaintiff and Appellant, v. F. T. LA PRADE and A. T. LA PRADE, Cross-Defendants and Appellees.

1. FRAUDULENT CONVEYANCES—BONA FIDE CREDITOR PARTICIPATING IN ATTEMPT TO HINDER AND DELAY OTHER CREDITORS CANNOT ASSERT VALIDITY OF TRANSFER AS AGAINST THEM.—Even a *bona fide* creditor cannot participate actively in an endeavor to hinder and delay other creditors by a transfer of the debtor's property, and then assert the validity of such transfer in a creditor's suit, though incidentally his debt may be paid thereby.

2. FRAUDS, STATUTE OF—SALE OF CORPORATE STOCK DELIVERED TO PURCHASER AND INDORSED AND RETURNED BY HIM AS COLLATERAL SECURITY HELD NOT SUBJECT TO ATTACK. — A sale of corporate stock, all of which was issued and delivered to the purchaser

———————

1. See 12 R. C. L. 580.
2. See 25 R. C. L. 616.

and indorsed and returned by him as collateral security for his notes, *held* not subject to attack, as void under the statute, in a suit to set aside conveyances by the purchaser as in fraud of creditors.

3. CONSTITUTIONAL LAW—STATUTES PRESUMED CONSTITUTIONAL UNTIL DECLARED OTHERWISE.— All statutes are presumed constitutional until declared otherwise in an action wherein such matter is properly before the court.

4. COURTS—ASSUMPTION OF STATUTE'S CONSTITUTIONALITY NOT BINDING IN ANOTHER ACTION.—The court's assumption of the constitutionality of a statute, in an action wherein such question is not directly presented, is not binding on it in another action wherein the question is properly raised.

## ON REHEARING.

(For former opinion, see *ante*, p. 82, 222 Pac. 407.)

APPEAL from a judgment of the Superior Court of the County of Maricopa. W. A. O'Connor, Judge. Original judgment modified and as modified, affirmed.

Mr. Thos. P. Walton and Mr. Herbert B. Shoemaker, and Mr. Robert McMurchie and Messrs. Norris & Norris, for Cross-plaintiff and Appellant.

Messrs. Kibbey, Bennett, Gust & Smith and Mr. F. J. Duffy, for Cross-defendants and Appellees.

LOCKWOOD, Superior Judge.—Appellees herein have moved that the judgment of this court hereinbefore entered be set aside and that a rehearing be granted, assigning five different grounds, which may be briefly summarized as follows:

First. That A. T. La Prade was not a purchaser, but a creditor, who merely accepted a transfer of property, of sufficient value only to pay his debt,

---

3.  See 6 R. C. L. 97; 25 R. C. L. 806.
    See 12 C. J. 791; 15 C. J. 947; 27 C. J. 324, 631, 632.

and that the intent of F. T. La Prade and the knowledge thereof of A. T. La Prade was immaterial.

Second.   That A. T. La Prade was the equitable owner of the property transferred, and the transfer of the legal title was therefore not in violation of the statute.

Third.   That the undisputed evidence showed that the claim of the Bankers' Bond & Mortgage Company was fraudulent and also was within the statute of frauds.

Fourth.   That the court erred in assuming the provisions of chapter 125, Session Laws of 1921, are constitutional.

Fifth.   That it does not appear that the attachment liens directed by the court to be foreclosed are valid liens, and in any event they cannot be foreclosed on the undivided interest of F. T. La Prade.

In support of these propositions, counsel for appellees have filed a voluminous brief, and cited many excellent authorities, most of which lay down principles of law which are not disputed, either by counsel for appellants or this court.   The trouble is, however, that the majority of these authorities are based on a state of facts widely different from that found in this case, and it appears from the argument submitted with them that this court has all unwittingly been somewhat to blame for the erroneous views of counsel. In our desire to deal with appellees courteously, considerately, and even charitably, while we certainly have not indulged in *"suggestio falsi,"* yet apparently from the attitude of counsel for appellees we have certainly been guilty of *"suppressio veri,"* and such action by us, obviously misconstrued by counsel, has caused them, in their natural and indeed commendable zeal for their clients, to assume that every question of fact which we have not affirmatively and explicitly declared to be against them in our judgment has been resolved in their favor.

If the case is viewed with the vision of counsel for appellees, an injustice has indeed been done. They see an honest man, who has suddenly to his amazement found himself to be insolvent, and with an only son one of his principal creditors. He has reluctantly determined that since he cannot satisfy all his creditors, and must choose between them, he will prefer the natural blood ties, and therefore transfers to that son property which will partially, though not entirely satisfy his debt, and the son, knowing all the facts, and with no desire except to collect that just indebtedness, merely accepts from his father part of what is rightly due him. And we agree with counsel that on such a state of facts, not only an overwhelming weight of authority, but abstract justice, requires that the transfer be upheld.

This, however, was not the picture which was before our eyes when we rendered our decision in the case. On the contrary, we saw a father who had conceived of himself as a Napoleon of finance, and had suddenly discovered that it was Napoleon the Little, rather than Napoleon the Great, whom he resembled. Believing that he had incurred legal and enforceable obligations which he did not wish to pay, he sent for his son, and they two, planning and acting together, disposed of all the property of the father for the purpose of placing it beyond the reach of certain creditors. After the intent had been formed and partially carried into execution, however, they realized that their actions were subject to attack, and after consultation with astute counsel, the present theory of defense began to evolve. Nor is the picture legally relieved from its somber hue by the fact, stated by us in our opinion, that both father and son believed those legally enforceable debts to be inequitable. As we said before:

"It cannot be permitted that debtors, no matter how honestly, may determine for themselves the legality

of a possible indebtedness, and particularly it cannot be allowed that even upon such a belief they may resort to a prohibited means to hinder, delay, or defraud the alleged creditor from enforcing any right he may establish according to the rules of law.''

If our picture be the correct one—and after again carefully examining the record, and eliminating therefrom all the self-serving declarations and other evidence erroneously admitted, we are fully convinced that only a mind blinded, even though honestly, by self-interest, passion or prejudice, can doubt that it is true—our original ruling was proper. Even a *bona fide* creditor cannot participate actively in the intent and endeavor to hinder and delay other creditors by means of a transfer of property, and then claim the transfer to be valid in a creditor's suit, though incidentally his debt may be paid thereby. *Richards* v. *Schreiber et al.,* 98 Iowa, 422, 67. N. W. 569; *Thompson* v. *Furr,* 57 Miss. 478; *Foster* v. *Grigsby,* 1 Bush (Ky.), 86; *Atlantic Ref. Co.* v. *Stokes,* 77 N. J. Eq. 119, 75 Atl. 445; *Bishop* v. *Bishop,* (Mo. Sup.), 228 S. W. 1065; *Garland* v. *Rives,* 25 Va. (4 Rand.), 282, 15 Am. Dec. 756; *Hafner* v. *Irwin,* 23 N. C. 490.

The first ground urged for a rehearing is untenable, for the reason that the facts suggested by counsel and on which their argument is based are not consonant with those adopted by the court as true.

This also disposes of the second point. As we stated explicitly in our original opinion, we are not in any manner deciding or attempting to decide what, if any, interest A. T. La Prade has in the property in question as heir of his mother. We simply held that for the reasons set forth above, the conveyances attacked were void as to creditors. They were not made merely to give a preference to an existing creditor, nor to carry out a resulting trust, but to hinder

and delay creditors, and were participated in actively by both parties. Any right or title based on those conveyances, and those alone, must therefore fall. If as a matter of fact and law, the interest of A. T. La Prade as heir of his mother is such that a constructive or resulting trust in any or all of the property standing in the name of F. T. La Prade can be established, our decision in no way prevents the former from setting that up as against the attachment liens. All it does is to prevent his claiming title against a *bona fide* creditor through any right except as heir, and such right is all he is entitled to, either morally or legally. The case of *Kingsbury* v. *Christy,* 21 Ariz. 559, 564, 192 Pac. 1114, is not at all in point. The conveyance in that case was not made to defraud creditors, but merely to carry out a pre-existing agreement between the parties, supported by a sufficient consideration.

The third point sets up that the claim of the Bankers' Bond & Mortgage Company was fraudulent, and that it was void under the statute of frauds. We see nothing in the argument and authorities presented by counsel for appellees to change our former opinion on this point. The question of the statute of frauds was not suggested in the original arguments and briefs, and it is of considerable doubt whether in any case it would apply to a transaction like this, where it was not the purchase of real estate nor an interest therein, but merely of stock in a corporation. But at all events, it appears affirmatively that there was a delivery of the entire property purchased. The stock was issued to F. T. La Prade and indorsed by him and returned as collateral security for his notes. Whatever defense he might make in a suit on the notes and check, he certainly could not contend it was not a completed transaction, and as we have indicated before, appellant was not required to litigate the validity of that claim in this action. The most he could be

required to do was to show that the claim was not on its face invalid.

The fourth point is certainly a novel one. It is substantially to the effect that this court must presume a statute to be unconstitutional in this action because its validity is attacked in another pending case. To the contrary, the universal rule of law is that all statutes are presumed to be constitutional until they are declared not to be so, in an action where that matter is properly before the court. This rule is just as binding on this court as on any individual citizen, and our necessary assumption of constitutionality in this action can in no way bind us in another one where the question is properly raised.

It is possible there may be some merit in the fifth point urged. Apparently it was assumed by both parties on their first presentation of the case that the attachments were valid liens against the property of F. T. La Prade, if any such existed, and we proceeded on that assumption. We certainly had no intention of determining that point, except as it was apparently conceded by both parties to be correct, nor do we wish to deny to any of the parties rights to which they may be entitled upon the facts or the law.

To sum up, we were, and are still, of the opinion that F. T. La Prade and A. T. La Prade joined in an effort to hinder and delay a creditor by means of conveyances prohibited by law, and that the same is so conclusively established by the record that it would be a waste of time and money to send the case back for a new trial. We further were, and are still, of the opinion that A. T. La Prade can in no way be prejudiced in his rights as the heir of his mother by our setting aside such conveyances. The only thing he can lose is a possible right additional to that of heir. If he is the owner, legal or equitable, of any of the property in question, by reason of such heirship, those rights are expressly protected by the judgment

herein. Less than this we have not given him. More than this he is neither legally nor morally entitled to.

If, as has been suggested, though not expressly stated, F. T. La Prade has any legal defense to the attachments in question, we do not wish to deny him that defense. The judgment heretofore entered is modified so as to read in part "that a foreclosure of said plaintiff Lentz's attachment liens be made so far as the same may be found to be valid according to law against all the right, title, and interest of defendant F. T. La Prade in said property," and in all other respects will stand as originally rendered.

McALISTER, C. J., and ROSS, J., concur.