CHASE, MERRITT & BLANCHARD v. WALTERS *et al.*

1. Practice: OBJECTIONS TO EVIDENCE. A general objection to the admission of evidence, specifying no ground upon which such objection is based, is insufficient, and cannot be taken advantage of on appeal.

2. Fraudulent conveyance: KNOWLEDGE BY GRANTEE WHEN A CREDITOR. Where two or more *bona fide* creditors are engaged in a race for priority, the one securing it by a mortgage to him from the debtor cannot have his right defeated by, or postponed to, a more tardy or less fortunate creditor, by showing a fraudulent intent on the part of the debtor in making such mortgage, and knowledge of such intent on the part of the creditor. Fraud, in its legal sense, cannot, without more, be predicated upon such a transaction.

3. —— A mortgage executed by a debtor to a creditor, with the intent on the part of the debtor to delay or defraud another creditor, will not be held fraudulent and void, even though such intent is known to the creditor receiving the mortgage, if he accepts it for the purpose of securing a *bona fide* debt due him from the mortgagor.

*Appeal from Lee County District Court.*

THURSDAY, APRIL 7.

ACTION by plaintiffs against the defendant J. M. Walters, upon notes and accounts for goods sold, etc. An attachment was obtained upon the ground that the defendant had disposed of his property in part, with intent to defraud his creditors. The attachment was served by notice to the State National Bank of Keokuk, as garnishee. The plaintiffs obtained judgment for the amount claimed against the defendant Walters. The bank in its answer as garnishee denied indebtedness, or possession of property belonging to the defendant. The plaintiffs took issue thereon; trial to a jury, verdict and judgment for garnishee. Plaintiffs appeal.

*Gilmore & Anderson* and *McCrary & Miller* for the appellants.

*Henry Strong*, for the appellee, made the following reference to adjudications in this and other States, in support of the judgment below:

*Miller* v. *Bryan*, 4 Iowa, 58, was a sale, not a mortgage of personal property, and the court say that if Miller, the purchaser, participated in, or had knowledge of the fraudulent intentions of Stuart, the seller, the sale would be illegal as against creditors.

*Fifield* v. *Gaston*, 12 Iowa, 218. This was a contest between two creditors in regard to the validity of a conveyance given by the debtor, Mark G. Fifield, as security to Gaston, one of his creditors, which the plaintiff, also of the name of Fifield, seeks to set aside as fraudulent, and is substantially, in its legal bearings, similar to the case at bar.

The court says : " A fraudulent purpose on the part of the grantor is not ·sufficient. A like intention must be traced to the grantee, and unless shown, the conveyance will be upheld." The court further say that the burden of proof is upon the party seeking to set aside the mortgage as fraudulent, " and he should not leave the court to act upon conjectures, nor upon proofs loose and indeterminate in their character. The legal title should not be diverted, except upon testimony which is clear, distinct and satisfactory." Plaintiffs do not even contend in this case that there is any proof of fraudulent intention on the part of the bank; far less, clear, distinct and satisfactory proof of such intention. In the case we have just referred to, the court further say, that "testimony based alone upon what a party should have said, made up of loose and random conversations, is weak and unsatisfactory, and should

be received with great caution." *Johnson* v. *McGrew*, 11 Iowa, 151. *Wright & White* v. *Wheeler*, 14 id. 14.

In *Davenport* v. *Cummings*, 15 Iowa, 224, the court say : " Every mortgage may be said, in some sense, to have the effect of hindering or delaying other creditors in the collection of their debts ; to the extent of the incumbrance, it deprives other creditors of the right to resort to such property in the collection of their debts.   *   *   * It is not in this sense, however, that these instructions are to be understood.   Such instances leave out of view the essential element, to wit, the question of intention." And further, speaking of the mortgagee, the court say : " If there is no intention to hinder or delay creditors, there is no legal wrong.   It is the intention to do that which is illegal that makes the conveyance fraudulent, and not simply the doing of an act which, without the wrong intention, may result in the same thing."

In *Wilson* v. *Horr*, 15 Iowa, 489, the court held the mortgage illegal, because " we are satisfied that the amount named in the mortgage, was much greater than what was honestly due Thul ; that the mortgagors were insolvent, or contemplating insolvency ; that complainants were largely the creditors of Horr & Bonn, and that the intention was to thus place the property in the hands of Thul (the father-in-law of one of the partners), to be held by him, not to secure any debt, but out of the reach of attachments or executions in favor of other creditors." The court refer to *Davenport* v. *Cummings*, already cited, to the effect that the fraudulent intention must be shared by the mortgagee, in order to invalidate the conveyance.

In *Lyman* v. *Cessford*, 15 Iowa, 232, the court say : " Fraud never ought to be, nor will be imputed, when the facts upon which it is predicated may consist with honesty and purity of intention."

In *Adams* v. *Foley*, 4 Iowa, 54, the court say: "A fraudulent intention on the part of these partners, or on the part of Marsh, of whom the plaintiff claims to have purchased, would not make the sale void, unless it was further shown that plaintiff participated in such fraud."

The case of *Hughes* v. *Montey*, 24 Iowa, 499, was that of a purchaser, in which the court held that a knowledge by the purchaser of fraudulent intention on the part of the seller was sufficient to invalidate the sale.

In *Davis* v. *Gibbon*, 24 Iowa, 263, the court say: "A debtor in insolvent circumstances doubtless has the right to make payment of the claims of a part of his creditors to the exclusion of others, or to secure the claims of a part, without providing that other creditors were to participate in the benefits of the security. All his property may be given in payment or security to one of his creditors, and the transaction will not be considered as fraudulent or void, because in contravention of the provision of chapter 77 of the Revision, which requires all general assignments made in contemplation of insolvency to be for the benefit of all the creditors of the insolvent."

In *Fromme* v. *Jones*, 13 Iowa, 480, which was a case similar to the one at bar, the court distinguish between such a mortgage and the transaction referred to in *Burrows* v. *Lohndorff*, 8 Iowa, 101, and say: "A debtor has a right to secure his creditor at any time, without reference to the claims of other creditors, provided, always, he acts in good faith and without any fraudulent design. * * * If he had power to sell absolutely, he has the power to incumber by mortgage."

*Sampson & Powers* v. *Arnold*, 19 Iowa, 470, contains a very able and logical analysis of the whole question of general assignments under our statute. In that

case the debtor executed simultaneously one or more conveyances in payment or security of certain creditors, paid a large debt to another, and finally made an assignment to defendant Arnold, all done at the same time in admitted contemplation of insolvency. That transaction was sustained by the court.

It cannot be questioned, that at common law a debtor might prefer one of his creditors by paying or securing his debt. *Midgrey* v. *Haskell*, 5 Mass. 144; *Hatch* v. *Smith*, 5 id. 42; *Stephen* v. *Bell*, 6 id. 339; *New England Insurance Company* v. *Chandler*, 16 id. 275.

This court have held that such is still the law of Iowa, notwithstanding the statute referred to. *Cowles* v. *Rickets*, 1 Iowa, 584. The word "assignment" in the statute, is used in its technical common-law sense, as "the transferring and setting over to another of some right, title or interest in things, in which a third person, not a party to the assignment, has a concern and interest." 1 Bac. Abr. 329.

"A sale or transfer by an insolvent debtor, of all his property, in actual payment or discharge of a pre-existing debt, he having other creditors known to the transferee, is not fraudulent *per se*, nor is such a transfer prohibited by the statute of Iowa, and such a transfer, unaccompanied by actual fraud, is valid as against other creditors of the debtors." *Cowles* v. *Rickets*, 1 Iowa, 582; *Johnson* v. *McGrew*, 11 id. 152.

If A., indebted to B. and C., after being sued to judgment and execution by B., go to C., and voluntarily give him a warrant of attorney to confess judgment, on which judgment is immediately entered and execution levied the same day on which B. would have been entitled to execution and had threatened to sue it out, the preference so given by A. to C. is not unlawful nor fraudulent within the meaning of the statute 13 Eliz. c. 5. *Halbird* v. *Anderson*, 5 T. R. 235.

" A conveyance will not be regarded as fraudulent at common law, merely because the grantee knew that the grantor was insolvent, and had debts, by judgment or otherwise, outstanding against him, even though the conveyance was made with the intent to defraud creditors, if the purchaser did not participate in the fraud. A conveyance made by a debtor in failing circumstances, and with a view to insolvency, to a creditor, who took it with a knowledge of the circumstances, but with a view of securing his own debt and a preference over other creditors, is valid as against the other creditors." *Sisson* v. *Roath*, 30 Conn. 15; *Darvill* v. *Terry*, 6 Hurl. and Nor. 807.

In *Beals* v. *Guernsey*, 8 Johns. 451, the court say: " The modern doctrine is not merely that the purchaser must know of the judgment; that fact will not of itself defeat a *bona fide* sale, or make it in the judgment of law fraudulent. * * * The rule is, that the purchaser, knowing of the judgment, must purchase with a view and purpose to defeat the creditor's execution, and if he do it with that purpose it is iniquitous and fraudulent, notwithstanding he may give a full price. The question of fraud depends upon the motive." This is almost in words the language of the instructions complained of by appellants in the case at bar.

In *Foster* v. *Hall*, 12 Pick. 99, Chief Justice SHAW says: " Nor can the estate of the grantee be defeated by showing a fraudulent purpose in the grantor, unless it also be shown that the grantee participated in it, and by his concurrence promoted it." See also *Bridges* v. *Eggleston*, 14 Mass. 249; *Partelo* v. *Harris*, 26 Conn. 480; *Beach* v. *Catlin*, 4 Day, 284; *Barrett* v. *French*, 1 Conn. 354.

In the cases just cited, the court sustains the doctrine upon which we insist, and also successfully refutes the few old Massachusetts cases, holding, as admissible,

evidence of conversations of the grantor with third parties, as to his motive in making the transfer.

" A debtor has a right to prefer one or more creditors by sale or mortgage, even if he thereby delays others, and even if such effect and intention are known to the preferred creditor at the time of accepting the security." *York, etc., Bank* v. *Carter*, 38 Pa. St. 446; *Funk* v. *Statts*, 24 Ill. 632.

In the case of *Root* v. *Reynolds*, 32 Vt. (3 Shaw) 139, the state of facts involved the identical legal question raised by the instructions objected to in the case at bar, and the court state the law as follows, viz.: "If one is so connected with the property of another, and the business in which it is used, that he honestly supposed it necessary for the preservation of his business interest to purchase that property, and does purchase it for a full consideration, for that reason and with that intent, and with no intention to aid the seller in a fraud upon his creditors, the sale will be valid, so far as regards the purchaser, as against the creditors of the vendor, notwithstanding the purchaser knows that the object of the seller is to defraud his creditors; but *aliter* if the purchaser, with knowledge of the vendor's fraudulent intent, be a mere volunteer in the purchase, and buy the property simply because he can make a good bargain." See also *Dart* v. *Farmers' Bank*, 27 Barb. 337, and *Ewing* v. *Runkle*, 20 Ill. 448.

In *Randall* v. *Buffington*, 10 Cal. 491, the court say: "Neither our statute nor the common law, prevents a debtor from paying or securing one creditor rather than another, and such a conveyance is not valid, unless both parties fraudulently intend thereby to withdraw the property from the claims of other creditors."

" A debtor in failing circumstances, has an undoubted right to prefer any creditor, as well a parent or other near relation, as a stranger, and if the debt were *bona fide*

due, the strongest considerations of duty may prompt a son to prefer a widowed mother over the claims of mere strangers." *Coley* v. *Coley*, 1 McCarter (N. J.) 350.

There is nothing contrary to this in *Twyne's Case*, 8 Coke, 80.

COLE, Ch. J. — I. The first error assigned is, upon the overruling of an objection by the plaintiffs to certain testimony offered by the garnishee. The objection was general, specifying no ground upon which it was rested. In such case, the party objecting cannot take advantage thereof in the Supreme Court. This point has been frequently ruled. See *Clark* v. *Connor*, *ante*, 310, and cases there cited.

1. PRACTICE: objections to evidence.

II. The next error assigned is, upon the refusal of the court to admit certain evidence offered by the plaintiffs. To understand this, it is necessary to state the leading facts of the case. That the defendant J. M. Walters was justly indebted to the plaintiffs, and also to the State National Bank of Keokuk, the garnishee, is conceded by both parties. The creditors had, respectively, been pressing the debtor for payment. Each had knowledge of the claims of the other. The plaintiffs' agent arrived in Keokuk, where the debtor resided and the garnishee did business, on a Saturday, and went there for the purpose of obtaining payment, or security by law, or otherwise. On the Sunday following, the debtor called upon the officers of the garnishee, who knew of the arrival of plaintiffs' agent, and proposed to execute to the bank a mortgage upon his stock of goods to secure his debt to the bank. The attorney of the bank was also seen that evening, and arrangements were made for an early meeting, at the bank on Monday morning, to prepare and execute the mortgage; and it was done accordingly. The mortgage

2. FRAUDU-LENT CONVEY-ANCE: knowl-edge by grantee when a creditor.

was recorded at nine o'clock on Monday morning. Some time after that, but during that day, the plaintiffs obtained their attachment, and procured the bank to be garnished thereunder. The bank took possession of the stock of goods under the mortgage, and sold sufficient thereof to satisfy the claims against Walters secured by it, and turned the balance over to the sheriff having the attachment. The issue made by the pleadings is, as to whether this mortgage was fraudulent.

The plaintiffs offered to prove, by a witness on the stand, that he had a conversation with Walters on the Sunday evening before the mortgage was made, and that Walters then stated it was his purpose to defraud the plaintiffs by executing a mortgage to the bank; and also offered to prove by another witness that Walters, immediately after the mortgage was made, declared he did it for the same purpose. To this evidence the record shows that the defendant objected, generally, and the court sustained the objection; and the bill of exceptions states that the court so ruled, because the plaintiffs did not propose to carry knowledge thereof home to defendant; and further ruled that plaintiffs might give evidence of any act or declaration of Walters showing such intent, which they proposed to bring home to defendant.

Ordinarily, where a creditor assails a conveyance as fraudulent, he must prove the fraudulent intent on the part of the grantor, and that the grantee participated in, or, at least, had knowledge of, that intent. We should hesitate before holding (as the language of the bill of exceptions seems to show the District Court held), that it was necessary to bring home to the grantee, or offer to do so, knowledge of the particular act or declaration of the grantor, showing the fraudulent intent. It might be sufficient to show the grantee's knowledge of that intent,

without bringing home to him the precise act or declaration whereby he had manifested it to others.

But we rest our affirmance of this ruling of the District Court upon the broad ground, that, where two or more *bona fide* creditors are engaged in a race for priority, the one securing it cannot have his right defeated, and be postponed to a more tardy or less fortunate one, by showing the fraudulent motive, and knowledge of it by the creditor, which prompted the debtor to give such priority. Fraud, in its legal sense, cannot, without more, be predicated upon such a transaction. The evidence, then, which was excluded was immaterial; and for this reason, if for none other, the court ruled correctly in excluding it.

III. The only other error assigned which it is necessary to notice, arises upon the modification and giving of instructions. The District Court held, and modified and gave instructions accordingly, that to accept a mortgage from a debtor, who gave it with the intent, known to the mortgagee, to delay or defraud another creditor, was not void or fraudulent, if the creditor accepted it for the purpose of securing a *bona fide* debt due such creditor from the mortgagor. This ruling is in accordance with the views hereinbefore expressed, and is

Affirmed.