Magarrell v. Magarrell.

MAGARRELL v. MAGARRELL.    (*Two Cases.*)

1.  **Domestic Relations**: COMPENSATION TO MEMBERS OF FAMILY
    FOR SERVICES. Three brothers were living together in the same
    house, and engaged in cultivating their farms as partners. Their
    mother and another brother lived with them as members of the
    same family, the former doing the household work, and the latter
    working at farm labor, and both had their living in the family at
    the expense of the three brothers, who were partners. But, in
    actions against the estate of one of the deceased partners for com-
    pensation, they clearly established the fact that their services were
    worth much more than their living, and were rendered with the
    expectation on their part, and on the part of the partners, that a
    fair compensation would be made therefor, though no agreement
    was ever had as to the amount of such compensation. *Held* that,
    in order to a recovery, it was not necessary to show an express
    contract to pay for the services. (*Scully v. Scully's Ex'r*, 28 Iowa,
    548, *distinguished ;* and see *Cowan v. Musgrave*, 73 Iowa, 384.)

2.  **Appeal** : PRACTICE : NEW PARTY AS APPELLEE'S ADMINISTRATOR.
    Although there is no showing anywhere in the record of this case
    that the appellee had died, or that Y. had been appointed as his
    administrator, the latter appeared, apparently without objection,
    as administrator, in the court below, and made a motion for the
    approval of the report of the referee, which was sustained. *Held*
    that, upon such a showing, he had no such interest in the cause as
    to entitle him to have stricken from the record in this court the
    evidence which the real parties in interest had agreed to be cor-
    rect, but that his motion to strike should itself be stricken from
    the files upon the motion of appellants.

*Appeals from Cass Circuit Court.*

FILED, MAY 9, 1888.

THESE cases involve similar questions of law and
fact, and are considered together. They arise out of
claims filed by plaintiffs with defendant as the adminis-
trator of Joseph Magarrell, deceased. These claims
were submitted by the circuit court to a referee to
inquire into and report upon their validity. The referee
reported to the court the evidence and his findings of

fact. He also reported his conclusions of law, which were that the claims were based on services rendered for a partnership of which decedent was a member, and that they could not be enforced for want of an express contract with decedent for their payment. Objections to the report of the referee were filed by appellants and overruled by the court. Judgment confirming the report of the referee was rendered, and from this the plaintiffs appeal.

*H. G. Curtis*, for appellants.

*Willard & Fletcher*, for J. C. Yetzer, administrator, appellee.

ROBINSON, J.—The referee found the facts in regard to the claim of George Magarrell to be substantially as follows: From the beginning of the year 1877 until the death of decedent, John Magarrell, Robert Magarrell and decedent resided in Cass county, Iowa, and owned adjoining farms. Within one or two years from April, 1877, they began farming their lands in partnership, and continued to so farm them until the death of Joseph. George Magarrell worked on these farms from April, 1877, until they were farmed in partnership, and then worked for the partnership while it lasted. During this time George was unmarried, and made his home with his brothers, the members of the partnership. His clothing and spending money, indefinite in amount, were provided for out of the sale of products of the lands farmed in partnership. He was treated by the partners as they treated each other, except that he had no interest in the business. He had a mare and colt raised on the farm, and was in every way treated as a member of the family. There was never any accounting nor settlement between George and the partnership prior to the death of Joseph. No express contract was made with George for his services, nor for the amount of wages he should receive, nor were wages paid to him. At various times there were conversations in regard to his receiving land for his services, but no express contract was made

as to value or quantity of the land he was to receive, nor did decedent engage in such conversations. The referee found the facts in regard to the claim of Jane Magarrell to be as follows: In April, 1877, she and her husband began to make their home with their sons, John, Robert C. and Joseph Magarrell, in a house on the farm of John, in Cass county. Their sons supplied the home so made with groceries, provisions, clothing and other family necessaries from the sale of the products of their farms, without any contribution by the parents. The mother performed the necessary household labor, often marketing the butter and eggs and applying their proceeds as she saw fit. She and her husband were provided with food and clothing, and shared the home so made equally with the sons. Conversations were often had in the family in regard to the mother's being compensated for her services as housekeeper, but no agreement was ever made nor rate of wages fixed, nor was there ever any accounting or settlement for her services. No express agreement was made between the mother and decedent that she should be paid for her services, and no express provision was made by him that he would pay anything on account of them, but such a promise might be implied by one conversation established by the evidence. In addition to the facts found by the referee, the evidence set out in the abstract shows that George Magarrell was an excellent farm-hand, whose services were worth not less than twenty dollars per month for the eight or nine years in controversy. His mare was worked on the farm, and the value of her work was equal to the value of the clothes and amount of spending money received by him, and was so considered by the brothers. Both of the surviving partners testified that George was to receive pay for his work, and that they 'had paid him about sixteen hundred dollars as their share on settlement made since the death of Joseph. It also appears that the parents left their own home at the request and for the benefit of the three brothers who were in partnership. The services of the mother were worth not less than four dollars per

week, and the father paid for his support by doing chores. The mother was told repeatedly that she would be paid for her labor, although no amount was fixed.

I. The conclusion of law reached by the referee and confirmed by the court seems to have been that, in view of the relationship existing between the several parties to the transactions in question, an express agreement to pay for the services rendered must be shown to justify an allowance of the claims in suit. We do not think this conclusion was warranted by the facts of the case. While it is true that both claimants lived with the partners, yet it was under such circumstances as to rebut any presumption which might arise from their relationship that the services rendered were to be an equivalent for the home and supplies furnished, or that they were rendered without charge. The home and supplies were no just equivalent for the services, and were never so treated nor considered by the parties in interest. On the contrary, it was understood at all times that other payment for the services was to be made. Under the facts disclosed, there was no obligation on the part of either claimant to serve the partners without charge. In *Scully v. Scully's Ex'r*, 28 Iowa, 548, we held that "when it is shown that the person rendering the service is a member of the family of the person served, and receiving support therein, either as a child, a relative or a visitor, a presumption of law arises that such services were gratuitous, and, in such case, before the person rendering the service can recover, the express promise of the party served must be shown, or such facts and circumstances as will authorize the jury to find that the services were rendered in the expectation by one of receiving, and by the other of rendering, compensation therefor." It seems to us that the claimants clearly established the fact that their services were rendered with the expectation on their part, and on the part of the partners, that a fair compensation would be made for them. Hence it was not necessary to

1. DOMESTIC relations: compensation to members of family for services.

show an express contract to that effect. As bearing upon this point, see *Cowan v. Musgrave*, 73 Iowa, 384.

II. An "amended abstract," brief, motion to strike the evidence from the abstract of appellants, and written argument in support of such motion, have been filed by " J. C. Yetzer, administrator of the estate of Robert Magarrell, deceased." It is contended by appellants that this party is a stranger to the record, and ought not to be permitted to dispute the correctness of the abstract, which was agreed to be correct by the real parties in interest, as shown by the record. The abstract of appellants shows that J. C. Yetzer, administrator, first appeared in the circuit court after the referee had filed his report, with a motion to affirm that report. The judgment refers to the motion, and affirms it, and notice of appeal was served on his attorneys. His right to appear in the proceedings does not appear to have been questioned in the circuit court, and the question for our determination is whether he has such an interest in the matter in controversy as to entitle him to the relief he demands in this court. Although he has filed what he terms an amended abstract, he has added nothing to the abstract of appellants which throws any light on his connection with the case. The only Robert Magarrell disclosed by the record is the defendant. His death is not shown, nor is the qualification of Yetzer as administrator of the estate of any person either alleged or proven. Under these circumstances, we do not think that this so-called administrator should be presumed to have such an interest in these proceedings as to entitle him to have stricken from the record the evidence which the real parties in interest agree properly belongs in it. His motion is, therefore, denied, and the motion of appellants to strike it from the files is sustained. For the errors indicated, these causes are

2. APPEAL: practice: new party as appellee's administrator

REVERSED.