ROCKFORD BOOT & SHOE MANUFACTURING COMPANY
*et al.* v. MASTIN *et al.*

**Fraudulent Conveyance:** TO WIFE AND SONS . RIGHT TO PREFER
CREDITORS. A husband and father conveyed substantially all of
his property to his wife and two sons. The evidence shows that he
was indebted to his wife for money advanced, and to one of the
sons for labor performed and property sold, and that the value of
the property conveyed to each of them did not exceed the amount
of his indebtedness to them severally, but that he was not indebted
to the other son. He was at the time largely indebted to plaintiffs
and others. In an action by plaintiffs to set aside the conveyances
and subject the property to the payment of their judgments, *held*
that he had a right to prefer his wife and the son to whom he was
indebted, and to secure them by the conveyances, and that as to
them the relief asked was properly denied ; but that such relief was
properly granted as to the son to whom the father owed nothing.

*Appeal from Grundy Circuit Court.*

FILED, SEPTEMBER 7, 1888.

THE plaintiffs are judgment creditors of the defend-
ant Robert Mastin, and brought this action to subject
to the payment of their several judgments certain real
estate which he conveyed to his wife and two sons.,
Judgment was rendered for the defendants Leonora and
George W. Mastin, and against the defendant Alanson
Mastin. Both parties appeal.

*Rea & Hayes, W. J. Moir* and *H. L. Huff,* for
plaintiffs.

*George Ward* and *Boies, Husted & Boies,* for
defendants.

SEEVERS, C. J.—I. Robert Mastin came to Iowa from
New York, in 1871, and shortly afterwards he purchased,
and there was conveyed to him, four hundred acres of

land. On March 7, 1882, he conveyed two hundred acres thereof to his wife, Leonora Mastin ; one hundred acres to each of his two sons, Robert W. and Alanson T. At that time he was largely indebted to the plaintiffs and others, but whether he knew the extent of such indebtedness is a controverted question. In 1878 his son-in-law, Kelley, was engaged in the mercantile business, and being indebted to said Robert, the latter purchased the stock of goods and continued the business in his own name, but Kelley acted as his agent, and had full charge of the business. The defendants claim that Robert Mastin did not know that he was insolvent or largely indebted until after the conveyances of the real estate were made, and he so testifies ; but we think he did know, or was bound to know, that Kelley as his agent was doing an unprofitable business, and was incurring debts which to a greater or less amount were being pressed for payment. The defendants claim that nearly fifty years ago Robert Mastin purchased some real estate in the state of New York, and, being indebted therefor, he obtained from his wife, forty years ago, some money which she obtained from her father, and that about ten years afterwards he obtained from her more money, which was due her as her share of her father's estate. They claim that said Robert promised at various times to pay his wife said money, with seven per cent. interest. The plaintiffs insist that there was no valid obligation or promise on the part of said Robert to repay such money, but that the same was a gift from his wife. It is true there was no written promise to pay ; but that she did not regard it as a gift is clearly established, and we also think that he at least acknowledged the indebtedness, and somewhat indefinitely agreed to pay her whenever she wanted it. The money so obtained was invested in the land purchased in New York, which he sold for upwards of sixteen thousand dollars. Both Robert Mastin and his wife testify that the latter refused to sign the deed unless the money so received by her husband was paid or secured

to her, and that the amount was then computed and agreed to be seventy-eight hundred dollars, for which amount a mortgage, given for a part of the purchase money on the real estate in New York, was assigned and transferred to her. That such a mortgage was so assigned and transferred must be regarded as established, for it appears of record in the proper office in New York. Such transfer, we think, vested in Mrs. Mastin the title to such mortgage and the money due thereon. There is no evidence in the record tending to show that Robert Mastin was indebted at that time. Certainly he was not to any of the plaintiffs. Conceding the assignment to be an executed gift, the plaintiffs cannot legally make any valid objection thereto. But we think there was a valid and sufficient consideration for the assignment of the mortgage. Afterwards, and prior to the conveyance of April 7, 1882, Mrs. Mastin permitted her husband to collect the amount due upon the mortgage, and the same was used by him to pay debts, and a portion was loaned to his son-in-law, Kelley. We find from the evidence that when Mrs. Mastin let her husband have the money due on the mortgage he became her debtor to such amount, and that she on more than one occasion asked that he should give her security therefor. At a time when the evidence fails to show that he was in debt or in any way embarrassed, the matter was broached of conveying her a portion of the land. There was talk about it, and an effort made to do so, in December, 1881, but owing to an accident, or rather the inability of the person selected to draft the conveyance, the matter was not consummated. We are unable to find from the evidence that Mrs. Mastin had any knowledge that her husband was indebted to any considerable extent, and certainly not that he was insolvent. She so testifies, and there is nothing in the record which will warrant us in disbelieving her. She was a creditor of her husband, and he had the same right to secure or pay her as any other creditor. He conveyed, and she accepted, the land in payment of such indebtedness, and it is immaterial if

her husband did at the same time sell substantially all the property he had ; and it is immaterial also that the same was done hastily, with an apparent design to place the title to the property beyond the reach of the plaintiffs, for the reason that Robert Mastin had the right to prefer one creditor to another, and his wife had the right to insist on and accept all that she was legally entitled to. The value of the land did not exceed the amount of the indebtedness.

II. The theory of the defendants is that Robert Mastin was indebted to his sons for work, labor, and property sold him by them ; and, as to George W. Mastin, we find this is true. He, we believe, is about forty-six years old, and the evidence shows that his father agreed when he was in New York that if he would remain with him for a certain time he would give George W. one thousand dollars. The latter performed this agreement on his part. He worked several years for his father, and it was agreed that he should be paid therefor, and the latter became indebted to him for property purchased. We have read the evidence with much care, and reach the conclusion that Robert W. Mastin was indebted to his son George W. in a sum of about three thousand dollars, which is about the value of the property conveyed. The evidence tends to show, and we think it is established, that George W. either knew his father was in seriously embarrassed circumstances at the time of the conveyance, or, if not, he had sufficient knowledge thereof to put him on inquiry. But, as he was a *bona-fide* creditor, he had a right to secure himself ; and in such a case the diligent creditor is entitled to priority over the tardy or less fortunate creditor, unless there was an actual intent to defraud, instead of a desire simply to secure an honest debt. *Chase v. Walters*, 28 Iowa, 460 ; *Aultman v. Heiney*, 59 Iowa, 654. We are not satisfied from the evidence that George W. Mastin intended in taking a conveyance of the land to defraud the creditors of his father. His object was, we think, to obtain payment for his work, labor and property.

III. While it must be conceded that, under the evidence, Alanson T. Mastin performed work and labor for his father for which the latter may have agreed to pay him, and also leased the farm for one year, and was to receive one-half of all that was raised, and that he sold his share to his father, still we are of the opinion that under all of the facts and circumstances his father in fact was not indebted to him. He is about thirty-six years old, and is a man of intemperate habits. His character for truth and veracity has been to some extent impeached. He lived with his father, and money and clothes were from time to time furnished him, and no account of the same was kept, and, without referring to other circumstances, we have the conviction that he was not a *bona-fide* creditor of Robert Mastin at the time the conveyance was made. The result is that the judgment of the circuit court on both appeals is

AFFIRMED.