HORTENSE HATHEWAY, Executrix, Appellee, v. DORA G. HANSON et al., Appellants.

No. 45370.

May 6, 1941.

William M. Tatum and Welch, Acrea & Welch, for appellants.

Roy E. Havens and Michael Murray, for appellee.

MILLER, J.—The plaintiff's petition, filed February 11, 1939, asserts that she is the executrix of the Estate of Harry Z. Hatheway, deceased; defendants Dora G. Hanson and C. L. P. Hanson are wife and husband and Augustus T. Hanson is their son; on April 1, 1937, Dora Hanson owned an 80-acre farm free of encumbrance; about that date she and her husband executed and delivered to Augustus Hanson a mortgage thereon in the sum of $8,000 which was recorded on April 28, 1937; at that time Dora Hanson was indebted to Harry Z. Hatheway upon two promissory notes, one for $2,000 and one for $1,000; judgment was recovered on said notes on September 30, 1938; plaintiff is the owner of said judgment which is wholly unpaid; the conveyance to Augustus Hanson was fraudulent, in fraud of creditors, in that the grantors knew that an action was about to be instituted on the notes aforesaid, the conveyance was made and accepted to prevent a judgment on the notes becoming a first lien on the 80-acre farm and with intent to hinder, delay and defraud Hatheway; the conveyance was without consideration or for inadequate consideration, voluntary, fraudulent and void;

Dora Hanson has no other property out of which plaintiff's judgment could be satisfied; the mortgage rendered her insolvent and unless it be set aside plaintiff's judgment must remain wholly unpaid; plaintiff has no adequate remedy at law. Certain interrogatories were attached to the petition. The prayer was that the mortgage to Augustus Hanson be declared void as against the plaintiff, the real estate be subjected to plaintiff's lien and the judgment satisfied therefrom.

The answer of defendants admitted the identity of the parties, the ownership of the 80-acre farm by Dora Hanson, the execution and delivery of the mortgage to Augustus Hanson, the recovery of judgment by the plaintiff and denied all other allegations of the petition. The prayer was that the action be dismissed.

The interrogatories, attached to the plaintiff's petition, were addressed to defendants, Dora Hanson and Augustus Hanson. The questions asked sought information concerning the consideration, if any, for the mortgage to Augustus. Both defendants filed answers to the interrogatories which asserted substantially the same facts, to wit: that Dora Hanson was indebted to Augustus on April 1, 1937, in the sum of $5,240.33 by virtue of an oral contract whereby Augustus was to render services as manager and farm hand for a period of eight years commencing on January 3, 1932, and was to receive therefor $1,000 per year, and board, room, clothing, spending money and the use of the family automobile which was to be registered in his name; the agreement was made with both parents but the mother agreed to pay Augustus to the full extent of her ability without contribution from the father if possible to do so; there were five children in the family; Dr. Harold C. Hanson, a dentist, now 44, who attended college 5 years; Nellie Moore, now 33, who attended college 4 years; Dr. Lawrence C. Hanson, (M. D.) now 31, who attended college 7 years; Augustus Hanson, now 28, who only completed the 10th grade in public schools; Carl Hanson, now 20, who graduated from high school; the father opposed financing the collegiate education of the three older children and the mother agreed to repay him from the 80-acre farm; $16,000 was spent for such collegiate training; in 1927, the father was 67 years old, in failing health, Augustus

left high school and worked their farms without compensation until he attained his majority on January 3, 1932, on which date he demanded an agreement with his parents for compensation; the aforesaid agreement was then made; the eight year period, specified therein, would be concluded some 34 days before Carl Hanson would attain his majority; Augustus has performed his part of the agreement but has received only his board, lodging, clothing, spending money and use of the family car; all the income of the farms has been placed to the account of the father; about April 1, 1937, Augustus demanded written evidence of the agreement; the three defendants consulted a lawyer and were advised that the simplest way to evidence the agreement was the execution of a note and mortgage for $8,000, which was done for the purpose of discharging the mother's obligations to Augustus and to the father.

Dora Hanson, as a witness for plaintiff, testified that she owned no other property. The 80 acres are unimproved. She knew that Harry Hatheway died in April, 1937. She identified the note and mortgage herein. Both are dated April 1, 1937. The note promises to pay $8,000 three years after date without interest. She also identified her answer to the interrogatories attached to the petition and same was offered by plaintiff "without vouching for the credibility of the statements so made". Defendants objected to such limitation on the offer. On cross-examination, over objection by plaintiff, she testified to the facts set forth in such answer. She also testified that the interest on the Hatheway notes was paid for several years, the money being supplied primarily by her son Harold. The $2,000 was borrowed to enable Harold to open a dental office. The $1,000 was borrowed to enable him to buy a practice at Loup City. The two notes were signed by Harold with his mother as surety. When the agreement was made with Augustus, she supposed Harold would take care of the Hatheway notes as he had said he would. The taxes on the 80-acre farm are over $3 per acre. The income over the taxes is a good deal less than $1,000 per year.

R. H. Stoneman, a farmer, fixed the value of the 80 acres at $75 per acre and the reasonable wages for farm hands at

$25 per month with board and room. When they work by the day, it is $1.50, $2.00 or $2.50 per day.

Augustus Hanson testified that in March, 1939, he signed an assessment roll listing $8,000 as moneys and credits. Before that he had never returned an assessment. Since the note did not bear interest and was not due he didn't think it had any value.

Plaintiff testified that Harry Z. Hatheway died April 24, 1937. Judgment on the notes was obtained September 30, 1938. In March, 1938, she had a conversation with Augustus Hanson about Harold's default on the notes. Augustus maintained that he did not know of the notes. He said he would tell his father about it and something would be done. Later, after she was served with notice that Harold had taken bankruptcy, she had another talk with Augustus. He offered her $2,000 for the notes and she refused. On neither occasion did he tell her that he had a mortgage on the 80 acres or that his parents were indebted to him. After plaintiff recovered judgment on the notes, she spoke to Augustus about his mortgage, that it was a big one. He smiled, said the land was not worth that much and said, "I guess when a person is doing anything they might as well do it right." Plaintiff asked, "Where did you get the money to pay your mother?" He said, "My uncle died in California and left me the money." He said nothing about his mother owing him for work. Later he told her his mother owed him the mortgage for work and that plaintiff would not get her money until his father died. He tried to compromise the notes but plaintiff insisted upon full payment.

G. M. Rock, a day laborer, testified that he worked on the C. L. P. Hanson farm; that laborers get $1.50 to $2.00 per day and $25 to $30 per month.

Dr. Lawrence Hanson, as a witness for defendants, testified that his father objected to spending the money for his collegiate education and that there was discussion about the fact that his mother was to repay his father for the education Lawrence received, which amounted to about $7,000. Nellie Moore testified similarly concerning her education which cost approximately $4,000. C. L. P. Hanson corroborated their testimony and that of Dora Hanson above reviewed. He also testified that

10 or 15 years ago he deeded his 120-acre farm to his wife on advice of a lawyer while director of a bank. He paid off what he owed and the farm was deeded back to him. A. E. Bassett testified that Augustus quit school when his father had a stroke and has been running the farms, that he is a sober, industrious, hard-working boy. M. L. Johnson testified that Augustus has worked on his father's farm since he was 16 years old, doing more work than any hired man would have done, has only seen him in town on Saturday nights.

Augustus Hanson testified that he did not know his mother had signed the notes to Harry Z. Hatheway until plaintiff told him, which was after April 1, 1937. He denied discussing any inheritance with plaintiff, suggested he might have said, ''Do you suppose I got that from my rich uncle,'' but did not remember doing that. He tried to keep Harold from taking bankruptcy. The only way he could stop him was to get a release from Mrs. Hatheway and the other creditors; he told plaintiff if she would allow Harold ''to stop bankruptcy'', they would pay the whole note as soon as they could get the money, but she wouldn't even talk. His version of the contract for $1,000 a year and the execution of the note and mortgage was substantially the same as his parents.

H. F. Pippitt testified that he observed Augustus working on the farm since he was 16 years old; he is a good farmer, straight and honest and upright in every respect, does nearly double the work of a hired man and has done so since he was 16. There was other evidence, of course, but the foregoing reflects the state of the record presented for our review.

The court entered a decree for the plaintiff, found the mortgage to Augustus to be fraudulent and void, decreed the 80-acre farm to be subject to the lien of plaintiff's judgment and taxed the costs to defendants. Defendants appeal.

As recently stated by us in Knabe v. Kirchner, 228 Iowa 1156, 1166, 293 N. W. 433, 437, ''The issues involved in suits of this character are hoary with age, but they present themselves with all the vigor of youth.'' The rules of law are well established by repeated pronouncements. The difficulty arises in the application of those rules to the particular record that

is presented to us. As stated in Pike v. Coon, 217 Iowa 1068, 1072, 252 N. W. 888, 890, ''The facts in this class of cases are different in nearly every case, and each case must therefore be decided upon its own peculiar facts.''

██ In the case of First Nat. Bk. v. Hartsock, 202 Iowa 603, 604, 210 N. W. 919, 920, we state:

''Fraud is not presumed. The relationship of parents and child between the grantors and the grantee does not create a presumption of fraud. It does require a critical examination of the attending circumstances. Fraud is not committed openly. It is an offense of secrecy. Direct evidence is rarely obtainable. Frequently it can be shown only by the circumstances admitted by the parties to it. Fraud may, and usually must, be proved by circumstantial evidence. The individual circumstances are usually inconclusive, and, attacked separately, may be blown away. The circumstances must ordinarily be considered together, and the force and weight to be given them are that of them in combination.

''The circumstances of a bona-fide transaction are ordinarily consistent with each other, and with generally recognized business methods and fair dealing, and not incredible. A fraudulent transaction naturally begets stilted, contradictory, and incredible evidence. The bona-fide transaction and the fraudulent one each has its well recognized indicia.''

In the case of Central City Sav. Bk. v. Snyder, (Iowa), 176 N. W. 695, 697, we state:

''The transfer of substantially all of the. property of the judgment debtor when embarrassed financially; the transfer by the debtors in anticipation of a suit; failure to put conveyances on record under certain circumstances; the unexplained retention by grantors, of the possession of property transferred —are badges of fraud. Transactions between relatives are, under the authorities, subject to scrutiny, and knowledge of grantors' fraudulent intent may be implied from the relationship of the parties. These, and other points argued, are familiar doctrine * * *.''

In Richards v. Schreiber, 98 Iowa 422, 428, 67 N. W. 569, 570, 571, we state:

"A creditor may take security for the debt due him, even though he is aware that the purpose of the debtor in giving it is to hinder, delay, and defeat, and thus to defraud, other creditors. Chase v. Walters, 28 Iowa, 460; Kohn v. Clement, 58 Iowa, 589 (12 N. W. Rep. 550); Lead Co. v. Haas, 73 Iowa, 404 (33 N. W. Rep. 657), and (35 N. W. Rep. 494); Jones v. Loree (Neb.) (56 N. W. Rep. 391). But if the creditor know of the fraudulent purpose of the debtor, and accept the mortgage wholly or in part to aid in accomplishing it, he participates in the wrong, and the mortgage is fraudulent against creditors, although it was only on a reasonable amount of property to secure a valid debt. Headington v. Langland, 65 Iowa, 276 (21 N. W. Rep. 650); Clark v. Raymond, 86 Iowa, 664 (53 N. W. Rep. 354); Crawford v. Nolan, 70 Iowa, 101 (30 N. W. Rep. 32); McCreary v. Skinner, 83 Iowa, 363 (49 N. W. Rep. 986); Jones, Chat. Mort. section 334."

The record is undisputed that, if the mortgage to Augustus is to stand, plaintiff's judgment is worthless. The amount of the mortgage is in excess of the value of the 80-acre tract. Dora Hanson has no other property. Harold has taken bankruptcy. The question is whether the mortgage to Augustus was executed fraudulently to prevent collection of the notes which form the basis for plaintiff's judgment.

The consideration which defendants assert for the mortgage is based upon services rendered by Augustus on the family farms. There is no dispute that he lived with his parents, as a member of the family, at all times. In the case of Enger & Co. v. Lofland, 100 Iowa 303, 309, 69 N. W. 526, 528, we state:

"The rule was laid down in Scully v. Scully's Ex'r, 28 Iowa, 548, that 'when it is shown that the person rendering the service is a member of the family of the person served, and receiving support therein, a presumption of law arises that such services were gratuitous; and in such a case, before the person rendering the service can recover, the express promise of the party served must be shown, or such facts and circumstances

as will authorize the jury to find that the services were rendered in the expectation by one of receiving, and by the other of rendering, compensation therefor.' See, also, Saar v. Fuller, 71 Iowa, 425 (32 N. W. Rep. 405); Manufacturing Co. v. Mastin, 75 Iowa, 112 (39 N. W. Rep. 219); Chadwick v. Devore, 69 Iowa, 640 (29 N. W. Rep. 757); Magarrell v. Magarrell, 74 Iowa, 380 (37 N. W. Rep. 961).''

■ To overcome the legal presumption that the services rendered were gratuitous, defendants testify that, on the day Augustus became of age, he demanded and obtained an oral express contract that he be furnished board, room, clothing, spending money, the use of the family car and $1,000 per year for a period of eight years. The evidence shows that the wages to be paid for the services to be rendered were far in excess of the wages usually paid for such services. Defendants argue that consideration was given to the fact that the older children were given college educations. Even so, the alleged contract is not what one would expect to see in the ordinary course of business.

Originally, nothing was reduced to writing. Defendants testify that, when Augustus demanded something in writing, the $8,000 note and mortgage were executed. The amount of the mortgage exceeded the value of the 80-acre farm. The note was made payable three years hence without interest. After the instruments were executed Harold took bankruptcy. The mortgage was not recorded until after Harry Z. Hatheway died. Augustus did not mention the mortgage to plaintiff at first. When she asked him about it, plaintiff says that he claimed to have loaned money that he received from a rich uncle. His explanation of this conversation is unconvincing. When plaintiff remarked about the size of the mortgage, Augustus is said to have replied, ''I guess when a person is doing anything they might as well do it right.'' He claims that his parents were indebted to him at the rate of $1,000 per year from 1932 on but he made no tax return for moneys and credits until after this action had been commenced.

Defendants insist that plaintiff cannot recover unless Augustus participated in the fraud. We have so held repeatedly. Knabe v. Kirchner, supra, and cases cited therein. There is evidence that Augustus did not know of plaintiff's notes

when the mortgage was executed. However, knowledge of fraudulent intent may be inferred from the family relationship of the parties. Central City Sav. Bk. v. Snyder, supra.

Defendants make much of the fact that Dora Hanson testified as a witness for plaintiff. In Pike v. Coon, supra, we state (217 Iowa 1068, 1074, 252 N. W. 888, 891) as follows, "Where the plaintiff makes the defendant his own witness, he vouches for his truthfulness, and to ask the court to consider the testimony of his own witness unworthy of belief, in the absence of other evidence to the contrary would violate all rules of evidence." However, we have also held, in cases such as this, that, since the plaintiff is obliged to use the defendants or some of them as witnesses, she is not bound by their testimony wherein it is contradicted by other evidence, or if it is thought to be inherently improbable. Brunskill v. Wallace, 224 Iowa 629, 631, 276 N. W. 598; Goeb v. Bush, 226 Iowa 1224, 1229, 286 N. W. 492.

This case resolves itself in the final analysis on the credibility of the witnesses. We have repeatedly recognized that, even though an action in equity is triable here de novo, since the trial court has the witnesses before him and is in far better position to judge their credibility, considerable weight is given to the findings of the trial court on such issue. In re Estate of Brooks, 229 Iowa 485, 492, 493, 294 N. W. 735, and cases cited. This is particularly true where the good faith of a party is in issue. Kurth v. Kansas City Life Ins. Co., 227 Iowa 242, 252, 288 N. W. 90, 95. When we give to the findings of the court below the weight to which we feel they are entitled, when we consider that fraud is an offense of secrecy, which may, and usually must, be proved by circumstantial evidence, that the specific circumstances, attacked separately, may be blown away and, therefore, must be considered together and the force and weight to be given them are that of them in combination, that a fraudulent transaction naturally begets stilted, contradictory, improbable evidence, we are not disposed to disturb the decree herein.

The decree is affirmed.—Affirmed.

HALE, C. J., and SAGER, STIGER, OLIVER, BLISS, WENNERSTRUM, and GARFIELD, JJ., concur.